# DUNN v. UNITED STATES

No. 77–6949.   Argued March 28, 1979—Decided June 4, 1979

MARSHALL, J., delivered the opinion of the Court, in which all other Members joined, except POWELL, J., who took no part in the consideration or decision of the case.

*Daniel J. Sears,* by appointment of the Court, 439 U. S. 1064, argued the cause and filed briefs for petitioner.

*Deputy Solicitor General Frey* argued the cause for the United States. With him on the brief were *Solicitor General McCree, Assistant Attorney General Heymann, William C. Bryson, Sidney M. Glazer,* and *Kathleen A. Felton.*

MR. JUSTICE MARSHALL delivered the opinion of the Court.

Title IV of the Organized Crime Control Act of 1970, 18 U. S. C. § 1623 (1976 ed., Supp. I), prohibits false declarations made under oath "in any proceeding before or ancillary to any court or grand jury of the United States." [1] This case turns

---

[1] In pertinent part, 18 U. S. C. § 1623 (1976 ed., Supp. I) provides:

"(a) Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the

on the scope of the term ancillary proceeding in § 1623, a phrase not defined in that provision or elsewhere in the Criminal Code. More specifically, we must determine whether an interview in a private attorney's office at which a sworn statement is given constitutes a proceeding ancillary to a court or grand jury within the meaning of the statute.

I

On June 16, 1976, petitioner Robert Dunn testified before a federal grand jury under a grant of immunity pursuant to 18 U. S. C. § 6002.[2] The grand jury was investigating *illicit*

same to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

. . . . .

"(c) An indictment or information for violation of this section alleging that, in any proceedings before or ancillary to any court or grand jury of the United States, the defendant under oath has knowingly made two or more declarations, which are inconsistent to the degree that one of them is necessarily false, need not specify which declaration is false if—

"(1) each declaration was material to the point in question, and

"(2) each declaration was made within the period of the statute of limitations for the offense charged under this section.

"In any prosecution under this section, the falsity of a declaration set forth in the indictment or information shall be established sufficient for conviction by proof that the defendant while under oath made irreconcilably contradictory declarations material to the point in question in any proceeding before or ancillary to any court or grand jury. It shall be a defense to an indictment or information made pursuant to the first sentence of this subsection that the defendant at the time he made each declaration believed the declaration was true."

[2] Under 18 U. S. C. § 6002:

"Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

"(1) a court or grand jury of the United States,

"(2) an agency of the United States, or

"(3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,

and the person presiding over the proceeding communicates to the witness

drug activity at the Colorado State Penitentiary where petitioner had been incarcerated. Dunn's testimony implicated a fellow inmate, Phillip Musgrave, in various drug-related offenses. Following petitioner's appearance, the grand jury indicted Musgrave for conspiracy to manufacture and distribute methamphetamine.

Several months later, on September 30, 1976, Dunn arrived without counsel in the office of Musgrave's attorney, Michael Canges. In the presence of Canges and a notary public, petitioner made an oral statement under oath in which he recanted his grand jury testimony implicating Musgrave. Canges subsequently moved to dismiss the indictment against Musgrave, alleging that it was based on perjured testimony. In support of this motion, the attorney submitted a transcript of Dunn's September 30 statement.

The District Court held an evidentiary hearing on Musgrave's motion to dismiss on October 21, 1976. At that hearing, petitioner, who was then represented by counsel, adopted the statement he had given in Canges' office and testified that only a small part of what he had told the grand jury was in fact true. App. 46. As a result of petitioner's testimony, the Government reduced the charges against Musgrave to misdemeanor possession of methamphetamine. See 21 U. S. C. § 844.

Petitioner was subsequently indicted on five counts of making false declarations in violation of 18 U. S. C. § 1623 (1976 ed., Supp. I). The indictment charged that Dunn's testimony before the grand jury was inconsistent with statements made "on September 30, 1976, while under oath as a witness

an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order."

in a proceeding ancillary to *United States .v. Musgrave, . . .* to the degree that one of said declarations was false . . . ." App. 5–6.[3] In response to petitioner's motion for a bill of particulars, the Government indicated that it would rely on the "inconsistent declarations" method of proof authorized by § 1623 (c). Under that subsection, the Government must establish the materiality and inconsistency of declarations made in proceedings before or ancillary to a court or grand jury, but need not prove which of the declarations is false. See n. 1, *supra.*

At trial, the Government introduced over objection pertinent parts of Dunn's grand jury testimony, his testimony at the October 21 evidentiary hearing, and his sworn statement to Musgrave's attorney. After the Government rested its case, petitioner renewed his objections in a motion for acquittal. He contended that the September 30 statement was not made in a proceeding ancillary to a federal court or grand jury as required by § 1623 (c). In addition, Dunn argued that use of his grand jury testimony to prove an inconsistent declaration would contravene the Government's promise of immunity, in violation of 18 U. S. C. § 6002 and the Fifth Amendment. The court denied the motion and submitted the case to the jury. Petitioner was convicted on three of the five counts of the indictment and sentenced to concurrent 5-year terms on each count.

The Court of Appeals for the Tenth Circuit affirmed. 577 F. 2d 119 (1978). Although it agreed with petitioner that the interview in Canges' office was not an ancillary proceeding under § 1623, the court determined that the October 21 hearing at which petitioner adopted his September statement was a proceeding ancillary to a grand jury investigation. 577 F. 2d, at 123. Acknowledging that the indictment specified the September 30 interview rather than the October 21 hear-

---

[3] Each count alleged that a specific representation in the September 30 statement was inconsistent with a corresponding portion of petitioner's grand jury testimony. See App. 3–11.

ing as the ancillary proceeding, the Court of Appeals construed this discrepancy as a nonprejudicial variance between the indictment and proof at trial. *Id.*, at 123–124. The court also upheld the use of petitioner's immunized grand jury testimony to prove a § 1623 violation. In so ruling, the court stated that immunized testimony generally may not be used to establish an inconsistent declaration without a prior independent showing that the testimony is false. But, in the court's view, petitioner's unequivocal concession at the October hearing that he had testified falsely before the grand jury justified the Government's reliance on that testimony. 577 F. 2d, at 125–126.

We granted certiorari, 439 U. S. 1045 (1978). Because we disagree with the Court of Appeals' ultimate disposition of the ancillary-proceeding issue, we reverse without reaching the question whether petitioner's immunized testimony was admissible to prove a violation of § 1623.

## II

A variance arises when the evidence adduced at trial establishes facts different from those alleged in an indictment. *Berger* v. *United States*, 295 U. S. 78 (1935). In the instant case, since the indictment specified the September 30 interview rather than the October 21 hearing as the ancillary proceeding, the Court of Appeals identified a variance between the pleadings and the Government's proof at trial. However, reasoning that petitioner's October 21 testimony was "inextricably related" to his September 30 declaration, the court concluded that petitioner could have anticipated that the prosecution would introduce the October testimony. 577 F. 2d, at 123. The court therefore determined that the variance was not fatal to the Government's case. See *Kotteakos* v. *United States*, 328 U. S. 750, 757 (1946).

In our view, it is unnecessary to inquire, as did the Court of Appeals, whether petitioner was prejudiced by a variance

between what was alleged in the indictment and what was proved at trial. For we discern no such variance. The indictment charged inconsistency between petitioner's statements in the September 30 interview and his grand jury testimony. That was also the theory on which the case was tried and submitted to the jury.[4] Indeed, the October 21 testimony was introduced by the Government only in rebuttal to dispel any inference that petitioner's grand jury testimony was true. See Tr. 82–83. But while there was no variance between the indictment and proof at trial, there was a discrepancy between the basis on which the jury rendered its verdict and that on which the Court of Appeals sustained petitioner's conviction. Whereas the jury was instructed to rest its decision on Dunn's September statement, the Tenth Circuit predicated its affirmance on petitioner's October testimony. The Government concedes that this ruling was erroneous. Brief for United States 15, 35; Tr. of Oral Arg. 25. We agree.

To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process. Few constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused. See *Eaton* v. *Tulsa,* 415 U. S. 697, 698–699 (1974) (*per curiam*); *Garner* v. *Louisiana,* 368 U. S. 157, 163–164 (1961); *Cole* v. *Arkansas,* 333 U. S. 196, 201 (1948); *De Jonge* v.

---

[4] The District Court instructed the jury that in order to convict petitioner, it had to determine beyond a reasonable doubt that petitioner "while under oath, made irreconcilably contradictory declarations . . . in any proceeding before or ancillary to a court or grand jury." Tr. 179. The court did not define the term ancillary proceeding, but admonished the jury to render its verdict on the charges alleged in the indictment, which specified June 16, 1976, and September 30, 1976, as the proceedings at which inconsistent statements were given. *Id.,* at 175–176; App. 3–11. Moreover, both the Assistant United States Attorney and defense counsel focused their summations on the September 30 statement. See Tr. 151, 167.

*Oregon,* 299 U. S. 353, 362 (1937). There is, to be sure, no glaring distinction between the Government's theory at trial and the Tenth Circuit's analysis on appeal. The jury might well have reached the same verdict had the prosecution built its case on petitioner's October 21 testimony adopting his September 30 statement rather than on the September statement itself. But the offense was not so defined, and appellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial. As we recognized in *Cole* v. *Arkansas, supra,* at 201, "[i]t is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to convict him upon a charge that was never made." Thus, unless the September 30 interview constituted an ancillary proceeding, petitioner's conviction cannot stand.

## III

Congress enacted § 1623 as part of the 1970 Organized Crime Control Act, Pub. L. 91–452, 84 Stat. 922, to facilitate perjury prosecutions and thereby enhance the reliability of testimony before federal courts and grand juries. S. Rep. No. 91–617, pp. 58–59 (1969). Invoking this broad congressional purpose, the Government argues for an expansive construction of the term ancillary proceeding. Under the Government's analysis, false swearing in an affidavit poses the same threat to the factfinding process as false testimony in open court. Brief for United States 21. Thus, the Government contends that any statements made under oath for submission to a court, whether given in an attorney's office or in a local bar and grill, fall within the ambit of § 1623. See Tr. of Oral Arg. 31. In our judgment, the term "proceeding," which carries a somewhat more formal connotation, suggests that Congress had a narrower end in view when enacting § 1623. And the legislative history of the Organized Crime Contol Act confirms that conclusion.

Section 1623 was a response to perceived evidentiary problems in demonstrating perjury under the existing federal statute, 18 U. S. C. § 1621.[5] As Congress noted, the strict common-law requirements for establishing falsity which had been engrafted onto the federal perjury statute often made prosecution for false statements exceptionally difficult.[6] By relieving the Government of the burden of proving which of two or more inconsistent declarations was false, see § 1623 (c), Congress sought to afford "greater assurance that testimony obtained in grand jury and court proceedings will aid the cause of truth." S. Rep. No. 91–617, p. 59 (1969). But nothing in the language or legislative history of the statute suggests that Congress contemplated a relaxation of the Government's burden of proof with respect to all inconsistent statements given under oath. Had Congress intended such a result, it presumably would have drafted § 1623 to encompass all sworn declarations irrespective of whether they were made in pro-

---

[5] Title 18 U. S. C. § 1621 provides:

"Whoever—

"(1) having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true; or

"(2) in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true;

"is guilty of perjury and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both. This section is applicable whether the statement or subscription is made within or without the United States."

[6] In particular, Congress focused on the two-witness rule, under which "the uncorroborated oath of one witness is not enough to establish the falsity of the testimony of the accused." *Hammer* v. *United States*, 271 U. S. 620, 626 (1926); accord, *Weiler* v. *United States*, 323 U. S. 606, 608–610 (1945). See S. Rep. No. 91–617, pp. 57–59 (1969).

ceedings before or ancillary to a court or grand jury. Particularly since Congress was aware that statements under oath were embraced by the federal perjury statute without regard to where they were given,[7] the choice of less comprehensive language in § 1623 does not appear inadvertent.

That Congress intended § 1623 to sweep less broadly than the perjury statute is also apparent from the origin of the term ancillary proceeding. As initially introduced in Congress, the Organized Crime Control Act contained a version of § 1623 which encompassed only inconsistent statements made in any "trial, hearing, or proceeding before any court or grand jury."[8] When asked to comment on the proposed statute, the Department of Justice noted that the scope of the inconsistent declarations provision was "not as inclusive" as the perjury statute. See Hearings on S. 30 et al. before the Subcommittee on Criminal Laws and Procedures of the Senate Committee on the Judiciary, 91st Cong., 1st Sess., 372 (1969) (hereinafter S. 30 Hearings). Significantly, the Justice Department did not suggest that the provision be made coextensive with the perjury statute. However, in subsequent Senate Subcommittee hearings, Assistant Attorney General Wilson indicated, without elaboration, that the Department advocated "including [under § 1623] other testimony, preliminary testimony and other statements, in the perjury field." *Id.*, at 389.

In response to that general suggestion, Senator McClellan,

---

[7] See *id.*, at 110–111; n. 5, *supra.*

[8] In its entirety, the original version of § 1623 (a) provided:

"Whoever, having taken an oath in any trial, hearing, or proceeding before any court or grand jury, in which a law of the United States authorizes the oath, knowingly falsifies fact, or makes any false, fictitious, or fraudulent statement or representation, or makes or uses any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both." S. 30, 91st Cong., 1st Sess., § 401 (1969).

on behalf of the Subcommittee, sent a letter to the Assistant Attorney General clarifying its purpose:

"You also read Title IV not to cover 'pre-trial depositions, affidavits and certifications.' This was not our intent in drafting the bill. We had hoped that it would be applicable, for example, to situations such as [the] kind of pre-trial depositions that the enforcement of S. 1861 would present. If we included in the statute the phrase 'proceedings before or ancillary to any court or grand jury,' do you feel that this intent would be adequately expressed?" *Id.*, at 409.[9]

The Government attaches great significance to the qualification, "for example," in Senator McClellan's letter. Because pretrial depositions were mentioned as illustrative, the Government interprets the term ancillary proceeding to subsume affidavits and certifications as well. But that is not the inference the Department of Justice originally drew from the Senator's letter. Responding to the proposed modification of § 1623, Assistant Attorney General Wilson did not advert to affidavits or certifications but stated only that

"[i]nclusion of the phrase 'proceedings before or ancillary to any court or grand jury' in the false statement provision would in our opinion adequately bring within the coverage of the provision pre-trial depositions such as that contained in S. 1861." S. 30 Hearings 411.

In our view, the Justice Department's contemporaneous rather than its current interpretation offers the more plausible reading of the Subcommittee's intent. Its attention having been drawn to the issue, had the Subcommittee wished to bring all affidavits and certifications within the statutory

---

[9] The provision of S. 1861 to which the Senator adverted involved use of depositions in racketeering investigations. It is currently codified as 18 U. S. C. § 1968.

prohibition, Senator McClellan presumably would have so stated.

Finally, to construe the term ancillary proceeding in § 1623 as excluding statements given in less formal contexts than depositions would comport with Congress' use of the phrase in a related provision of the Organized Crime Control Act. Title II of the Act, 18 U. S. C. § 6002, authorizes extension of immunity to any witness who claims his privilege against self-incrimination "in a proceeding . . . ancillary to" a court, grand jury, or agency of the United States, or before Congress or one of its committees. See n. 2, *supra.* Although neither the House nor Senate Report defines the precise scope of § 6002, they both specify pretrial depositions as the sole example of what would constitute an ancillary proceeding under that provision. H. R. Rep. No. 91–1549, p. 42 (1970); S. Rep. No. 91–617, p. 145 (1969).

Thus, both the language and history of the Act support the Court of Appeals' conclusion that petitioner's September 30 interview "lack[ed] the degree of formality" required by § 1623. 577 F. 2d, at 123.[10] For the Government does not and could not seriously maintain that the interview in Canges' office constituted a deposition. See Tr. of Oral Arg.

---

[10] In arguing that petitioner's September 30 interview was an ancillary proceeding, the Government relies on *United States* v. *Stassi,* 583 F. 2d 122 (CA3 1978), and *United States* v. *Krogh,* 366 F. Supp. 1255, 1256 (DC 1973). The defendant in *Stassi* was convicted under § 1623 of making statements in a Fed. Rule Crim. Proc. 11 guilty plea hearing that were irreconcilable with his declarations in an affidavit supporting a motion to vacate sentence. Without adverting to any legislative history, the Court of Appeals affirmed on the theory that a false affidavit "offends the administration of criminal justice as much as [other] false material declaration[s]." 583 F. 2d, at 127. Insofar as *Stassi's* analysis is inconsistent with our decision here, we decline to follow it. And *Krogh* affords no support for the Government's position in this case since the court there held only that a sworn deposition taken in the office of an Assistant United States Attorney General was a proceeding ancillary to a grand jury investigation.

25. Musgrave's counsel made no attempt to comply with the procedural safeguards for depositions set forth in Fed. Rule Crim. Proc. 15 and 18 U. S. C. § 3503. A court order authorizing the deposition was never obtained.[11] Nor did petitioner receive formal notice of the proceeding or of his right to have counsel present.[12] Indeed, petitioner did not even certify the transcript of the interview as accurate.[13]

To characterize such an interview as an ancillary proceeding would not only take liberties with the language and legislative history of § 1623, it would also contravene this Court's long-established practice of resolving questions concerning the ambit of a criminal statute in favor of lenity. *Huddleston* v. *United States,* 415 U. S. 814, 831 (1974); *Rewis* v. *United States,* 401 U. S. 808, 812 (1971); *Bell* v. *United States,* 349 U. S. 81, 83 (1955). This practice reflects not merely a convenient maxim of statutory construction. Rather, it is rooted in fundamental principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited. *Grayned* v. *City of Rockford,* 408 U. S. 104, 108 (1972); *United States* v. *Harriss,* 347 U. S. 612, 617 (1954); *Lanzetta* v. *New Jersey,* 306 U. S. 451, 453 (1939); *McBoyle* v. *United States,* 283 U. S. 25, 27 (1931). Thus, to ensure that a legislature speaks with special clarity when marking the boundaries of criminal conduct, courts must decline to impose punishment for actions

---

[11] Title 18 U. S. C. § 3503 (a) provides:

"Whenever due to exceptional circumstances it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved, the court at any time after the filing of an indictment or information may upon motion of such party and notice to the parties order that the testimony of such witness be taken by deposition . . . ."

The language of Fed. Rule Crim. Proc. 15 (a) is substantially the same.

[12] See 18 U. S. C. §§ 3503 (b), (c); Fed. Rule Crim. Proc. 15 (b).

[13] See App. 46; 18 U. S. C. § 3503 (d); Fed. Rule Crim Proc. 15 (d).

that are not "'plainly and unmistakably'" proscribed. *United States* v. *Gradwell,* 243 U. S. 476, 485 (1917).

We cannot conclude here that Congress in fact intended or clearly expressed an intent that § 1623 should encompass statements made in contexts less formal than a deposition. Accordingly, we hold that petitioner's September 30 declarations were not given in a proceeding ancillary to a court or grand jury within the meaning of the statute.[14]

The judgment of the Court of Appeals is

*Reversed.*

MR. JUSTICE POWELL took no part in the consideration or decision of this case.

---

[14] The Government points out that if this Court reverses petitioner's conviction on the ground that the September 30 statement was not given in an ancillary proceeding, petitioner will be subject to reindictment for making declarations in the October 21 hearing inconsistent with his testimony in the June 16 grand jury proceeding. Thus, the Government urges us to reach the second question decided by the Court of Appeals concerning the use of petitioner's immunized testimony to prove a violation of § 1623. Brief for United States 36–37. We decline to render an advisory opinion based on the Government's suppositions not only that petitioner will be reindicted but also that he will be convicted after a trial at which the immunized testimony is introduced.