**INVESTMENT COMPANY INSTITUTE, et al., Plaintiffs,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, et al., Defendants.**

Civ. A. No. 84–3875.

United States District Court, District of Columbia.

April 23, 1985.

Harvey L. Pitt, Henry A. Hubschman, David M. Miles, Washington, D.C., for plaintiffs.

Sandra M. Schraibman, Theodore C. Hirt, Keith Fischler, Attys., Civ. Div., Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

GESELL, District Judge.

This case concerns an interpretation of the Glass-Steagall Act that the Federal Deposit Insurance Corporation (FDIC) has implemented through regulations [1] permitting state banks insured by the FDIC that are not members of the Federal Reserve System to own affiliated subsidiaries engaged in the securities business. Plaintiffs are trade associations representing mutual fund companies and investment bankers that would compete with the security affil-

---

1. The regulations were finally adopted by the FDIC on November 19, 1984. *See* 49 Fed.Reg. 46,709 (Nov. 28, 1984), *to be codified at* 12 C.F.R. § 337.4.

iates of such banks.[2] To test the legality of the FDIC's actions, the parties have filed cross-motions for summary judgment, which have been fully briefed and argued.[3]

The regulations issued by the FDIC are designed to govern the manner in which insured non-member state banks can arrange to own subsidiaries and affiliates engaged in aspects of the securities business, particularly underwriting various types of securities. The regulations announce and assume that the Glass-Steagall Act does not bar such a relationship between an insured non-member bank and its security subsidiary or affiliate but proceed to control aspects of that relationship. The regulations rely on the FDIC's power, granted by the Federal Deposit Insurance Act, to prohibit unsafe and unsound banking practices. 12 U.S.C. § 1818(a). Plaintiffs do not seriously challenge the detailed terms of these regulations. Rather, they simply maintain that the regulations as a whole are illegal because the Glass-Steagall Act prohibits any securities activity by state insured non-member banks, whether directly or through subsidiaries and affiliates.

Since defendants have moved alternatively to dismiss the complaint on the ground that plaintiffs lack standing, that threshold issue must be resolved before considering the merits.

Plaintiffs' claim of injury is straightforward: they claim their members will be hurt competitively if the FDIC allows insured non-member state banks to set up subsidiaries and affiliates to compete with plaintiffs' members. Because in their view such competition is illegal and barred by Section 21 of the Glass-Steagall Act, 12 U.S.C. § 378(a)(1), they assert they are within the "zone of interests" protected by the Act. In another case where plaintiffs' members challenged a banking regulator's

interpretation of the Glass-Steagall Act to their disadvantage, the Supreme Court found plaintiffs' members within the Act's zone of interests. *Investment Co. Institute v. Camp*, 401 U.S. 617, 620–21, 91 S.Ct. 1091, 1093–94, 28 L.Ed.2d 367 (1971).[4]

The FDIC's argument against standing seeks to parse plaintiffs' alleged competitive injury into two parts and then separately to defeat each.

First, the FDIC argues that plaintiffs are only challenging the FDIC's interpretation of the Glass-Steagall Act, which merely states the agency's opinion that insured non-member state banks are not barred by the Act from establishing subsidiaries and affiliates to engage in securities underwriting and other transactions. The agency thus claims plaintiffs are seeking merely an advisory opinion from the Court on the correctness of the agency's view. Second, the FDIC asserts plaintiffs suffer no economic injury from the regulations themselves because those regulations do not open the door to competition with plaintiffs' members but merely partially close a door already open.

■ The validity of this argument, of course, is premised on the correctness of the FDIC's view that the door is already in fact open. The FDIC cannot so easily divide and conquer plaintiffs' standing. The FDIC's challenged act must be examined as a whole, not in its pieces. As a whole, the agency action coupling its interpretation of the Glass-Steagall Act with regulations implementing that interpretation plainly threatens economic injury to securities firms and provides standing to plaintiffs. The Court thus must address the merits of the complaint.

Section 21 of the Glass-Steagall Act provides in pertinent part:

**2.** There are approximately 9,000 state-chartered FDIC-insured banks that are not members of the Federal Reserve System.

**3.** *Amicus* briefs supporting the FDIC were filed by the Dealer Bank Association and the American Bankers Association.

**4.** Defendants criticize the *Camp* zone of interests rationale at great length but of course concede this Court must follow *Camp*, which has been repeatedly relied on by the United States Court of Appeals for the District of Columbia Circuit and the Supreme Court.

[I]t shall be unlawful—(1) For any person, firm, corporation, association, business trust, or other similar organization, engaged in the business of issuing, underwriting, selling or distributing, at wholesale or retail, or through syndicate participation, stocks, bonds debentures, notes, or other securities, to engage at the same time to any extent whatever in the business of receiving deposits subject to check or to repayment upon presentation of a passbook, certificate of deposit, or other evidence of debt, or upon request of the depositor: *Provided,* That the provisions of this paragraph shall not prohibit national banks or State banks or trust companies (whether or not members of the Federal Reserve System) or other financial institutions or private bankers from dealing in, underwriting, purchasing, and selling investment securities to the extent permitted to national banking associations by the provisions of section 24 of this title....

12 U.S.C. § 378(a)(1). Under section 24, national banks, with limited specific exceptions, are barred from engaging in securities transactions for their own account. 12 U.S.C. § 24 (Seventh). Neither section specifically mentions affiliates or subsidiaries. Section 20 of the Act bars affiliations between banks and securities firms but is expressly limited to banks that are members of the Federal Reserve system. 12 U.S.C. § 377. Similarly, section 32 of the Act—also limited to member banks—bars officers, directors or employees of security underwriting firms from being officers, directors or employees of banks at the same time, with certain exceptions. 12 U.S.C. § 78.

The parties agree that section 21 prohibits insured non-member state banks from engaging directly in the securities business. They disagree as to whether it also prohibits affiliates and subsidiaries of such banks from conducting a security business.

Section 21 is silent as to the activities of bank subsidiaries and affiliates. Plaintiffs argue that the bar in the section's first clause prohibiting security companies from taking deposits "to any extent whatever" by implication prevents banks from having security subsidiaries and affiliates.

Section 21 is a criminal statute, 12 U.S.C. § 378(b).[5] It must be strictly construed. *E.g., Dunn v. United States,* 442 U.S. 100, 112–13, 99 S.Ct. 2190, 2197, 60 L.Ed.2d 743 (1979). Plaintiffs' reading of the section violates this rule of construction. Beyond this, another rule of construction requires courts to give meaning to every part of a statute and to reject interpretations that render related sections surplusage or contradictory. *See In re Surface Mining Regulation Litigation,* 627 F.2d 1346, 1362 (D.C.Cir.1980). Under plaintiffs' interpretation of section 21, the prior section, section 20, becomes surplusage. That section forbids member banks from forming controlling affiliations with companies engaged in securities underwriting and similar activities. 12 U.S.C. § 377. Because plaintiffs read section 21 as forbidding any affiliations at all, controlling or not, between either member or non-member banks and securities firms, section 20 would become unnecessary and contradictory.

Plaintiffs try to avoid this awkward spot by reading section 20 as permissive rather than prohibitory. They contend that while section 21 has taken away any right of affiliation for both member and non-member banks, section 20 gives back some right of non-controlling affiliation to member banks.

There are two answers to this. First, the plain words of the statute are prohibitory, not permissive: "no member bank shall be affiliated ...." 12 U.S.C. § 377. Second, legislative history squarely indicates that Congress intended to place controls on the affiliations only of banks belonging to the Federal Reserve System and did not intend to restrict affiliations of state non-member

---

5. Because it is a prohibitory, not regulatory, statute, the FDIC has no authority to make exceptions to its ban by regulation. The FDIC contends it has not done so here but has only exercised its authority to control unsafe and unsound banking practices.

**686**

banks because at time of enactment 50 years ago it doubted Congress could exercise federal authority over state-chartered banks not within the Federal Reserve System. *See* 75 Cong.Rec. 9905 (May 10, 1932) (remarks of Sen. Walcott); [6] *id.* at 9911, 9913–14 (remarks of Sen. Bulkley).

As the Supreme Court has recognized, other legislative history of the Glass-Steagall Act shows that Congress intended to treat banks separately from companies affiliated by ownership with banks. *See Board of Governors of Federal Reserve System v. Investment Co. Institute,* 450 U.S. 46, 58 n. 24, 60, 101 S.Ct. 973, 982 n. 24, 983, 67 L.Ed.2d 36 (1981). While neither the Supreme Court nor any other court has confronted the issue presented by this case,[7] the legislative history, the statutory language and structure, and common sense all run counter to plaintiffs' position.

▪ The Court finds that section 21 was not intended to bar securities activities by subsidiaries or affiliates of insured non-member state banks. While Congress recognized the possible evils involved in such affiliations, it expressly addressed them in other sections of the Act but deliberately chose not to intrude upon state non-member banks in this respect. 12 U.S.C. §§ 78, 377.

FDIC's interpretation of section 21 is sustained. To the extent its regulations tend to keep state non-member insured banks and security affiliates apart, plaintiffs cannot complain. Any lessening of the effectiveness of legal competition gives these particular plaintiffs no ground to claim injury. Indeed, the complaint raises no substantial issue as to the validity of the FDIC's regulation other than plaintiffs' premise that insured non-member state banks cannot affiliate with security companies. Thus the plaintiffs' motion for summary judgment is denied and the defendants' motion for summary judgment is granted.

---

6. The dialogue between Senators Fess and Walcott on this issue is unequivocal:

> Mr. Fess. Earlier in the Senator's presentation he mentioned the fact that whether it be a national bank or a State bank, the control of affiliates does not extend outside of the Federal reserve set-up; that is, an affiliate of a State bank that is not a member of the Federal reserve system is not covered, is it?
>
> Mr. Walcott. Mr. President, there are State banks which exist now within the Federal reserve system, and they are member banks.
>
> Mr. Fess. Yes.
>
> Mr. Walcott. There are national banks within the Federal reserve system. Most of the national banks are under the Federal reserve system; so that, whether State or whether national, provided the bank is a member of

the Federal Reserve system and has an affiliate, that affiliate must be divorced within three years.

> Mr. Fess. The provision does not attempt to go beyond the Federal reserve system?
>
> Mr. Walcott. It does not control State banking, and the reason for that is obvious: The Federal Government has no jurisdiction over State banks.

75 Cong.Rec. 9905.

7. Plaintiffs' attempt to draw broad meaning from the Supreme Court's recent decision in *Securities Industry Ass'n v. Board of Governors,* — U.S. ——, 104 S.Ct. 2979, 82 L.Ed.2d 107 (1984) (*Becker*), fails for this reason. *Becker* did not address the affiliate issue at all.