UNITED STATES of America,

v.

**James Walter KELLY, Defendant.**

Crim. No. 88–0301–2 (CRR).

United States District Court, District of Columbia.

May 12, 1989.

Cynthia Lobo, Washington, D.C., for defendant.

Theodore Schmanda, Asst. U.S. Atty., for Government.

## MEMORANDUM OPINION AND ORDER

CHARLES R. RICHEY, District Judge.

The defendant Kelly has moved for a judgment of acquittal as to his conviction under Count Two of the Indictment, which charged him with a violation of the federal kidnaping statute, 18 U.S.C. § 1201(a). Kelly contends that the specific language of the indictment charged him with kidnaping "for ransom," whereas the proof at trial failed to establish that Kelly had ever sought "ransom" as that term is known in the law.[1] Accordingly, Kelly argues that the proof at trial failed to establish an essential element of the offense "as charged" in Count Two, and that his conviction thereunder must be lifted. The Court disagrees; Kelly's motion will be denied.

The essential facts are as follows. Kelly was charged, as were at least two others, with abducting Anthony Fultz in Washington, D.C., on the evening of May 16, 1988. The proof at trial indicated that Kelly and the others initially apprehended Fultz at the behest of a third individual, who, it is alleged, had promised to pay them $50,000 in return for Fultz' murder. Testimony indicated, however, that as the evening progressed the abductors' objective changed: although the source of the idea is unclear, someone suggested that, instead of killing Fultz for $50,000, Fultz pay his abductors $100,000 to kill their original employer. This pirouette led Kelly and the others to release Fultz at approximately 7:00 a.m. the next morning, with instructions to raise the $100,000 by noon or be killed. They assured Fultz that if he were able to raise the money, they would repudiate their original contract and instead kill their original employer.

---

1. According to Count Two of the Indictment: On or about May 16, 1988, within the District of Columbia, the defendants JOHN HEROME WATSON, JR. and JOHN DOE, also known as Kelly, willfully and knowingly did transport and cause to be transported in interstate commerce between the District of Columbia, the Commonwealth of Virginia and the State of Maryland, Anthony Fultz who theretofore had been unlawfully seized, confined, kidnapped, abducted and held by the said defendants and others whose identities are known to the Grand Jury for the purpose of receiving one hundred thousand dollars *in ransom.* (emphasis added).

### 1. *Sufficiency of Proof of "Ransom"*

■ Kelly contends, on the basis of these facts, that at no point did he or his enterprising colleagues demand "ransom" from Fultz. Implicitly, Kelly divides the evening into two parts. The first part involved the original contract. Kelly argues that, at this stage, the parties were merely carrying out an agreement with their original employer; they demanded nothing from Fultz, other than perhaps that he be still on the floor of the car in which they intended to carry him to his death. Kelly argues, and the Court agrees, that during this stage their actions cannot support a kidnaping conviction.

The second stage is different. Kelly argues that once the worm turned—once Fultz promised to pay his abductors $100,-000 if they would "reverse the contract"— the master/servant relationship that always existed merely changed masters, and that Kelly and his colleagues never formally demanded "ransom" from Fultz. In essence, Kelly argues that Fultz, at that stage, was no more being held for "ransom" than was the original employer when he contracted for Fultz' murder.[2]

The Court finds Kelly's analysis of events during the second part of the evening troublesome. The agreement between Fultz and his captors hardly reflects an arms-length bargain, struck between wily capitalists in furtherance of their respective commercial advantages. Blindfolded, trundled onto the rear floor of an automobile, and with a handgun at his temple, Fultz appears to the Court to have been at a substantial negotiating disadvantage. Fultz' abductors wanted his *money,* in the form of a "reverse contract"; had Fultz refused to negotiate, they would have killed him. The offer to "reverse the contract," even if it came from Fultz himself, represents an offer (or, if it came from Kelly or his colleagues, a demand) of *money* in return for Fultz' life. The intervening commercial formality of the "reverse contract" simply does not alter the substance of the evening's events. Seen from this perspective—a perspective that a reasonable juror could certainly find compelling—the Court must agree with the Government that the record contains sufficient evidence to support the jury's conclusion that Kelly abducted Fultz for "ransom," as charged in Count Two of the Indictment.

### 2. *Implicit Allegation of Variance*

Moreover, it seems to the Court that Kelly's motion would fail *even if* no reasonable juror could have found that Kelly abducted Fultz "for ransom."

The question arises at all only because the federal kidnaping statute, 18 U.S.C. § 1201(a), provides that kidnaping occurs whenever one person abducts another "for ransom *or otherwise.*" (emphasis added). Thus, although a kidnaper's anticipated remuneration may take the form of money— i.e., "ransom"—it may also take the form of anything else that the kidnaper may desire—i.e., "or otherwise." For whatever reason, in charging Kelly with federal kidnaping in Count Two, the government used language which, according to Kelly, limited its options: it charged Kelly with kidnaping "for the purpose of receiving one hundred thousand dollars *ransom.*" (emphasis added). Count Two makes no reference to the "or otherwise" language of § 1201(a).[3]

Kelly complains that, in so doing, the government put him on notice that it intended to try him under a particular theory of federal kidnaping—that he kidnaped Fultz for "ransom." Kelly asserts, however, that in fact the government tried and convicted him under the "or otherwise" language of § 1201(a). Kelly claims that this shift in the government's theory of federal kidnaping, without the benefit of a different or amended indictment, worked to

---

2. *See* Mem. of Points and Authorities in Support of Def's Motion for Judgment of Acquittal at 9 ("Fultz offer of money, conditioned as it was on the abductors completing an act for Fultz' benefit, cannot, without severe distortion, be considered a ransom offered by Fultz.").

3. Count Two of the Indictment contained the quoted language despite the fact that Counts One and Three, which charged conspiracy and kidnaping under the District of Columbia's statute—based on identical facts—used the terms "random and otherwise."

his prejudice, as he "was entitled to and did rely on that theory and defend against it at trial."

Kelly's is essentially a "variance" argument, *see Dunn v. United States*, 442 U.S. 100, 105–07, 99 S.Ct. 2190, 2193–95, 60 L.Ed.2d 743 (1979), although it is not framed as such in his memorandum. As stated in *Dunn*, "[a] variance arises when the evidence adduced at trial establishes facts different from those alleged in an indictment." *Id.* at 105, 99 S.Ct. at 2193. Here, Kelly argues in substance that the facts proved at trial, and on the basis of which he was convicted, do not coincide with those which the government warned Kelly in the Indictment that they would attempt to prove. Thus, a variance. Implicitly, Kelly also challenges the Court's jury instructions, which gave the jury leave to convict him on an "or otherwise" theory.[4]

■ A variance, however—even if one occurred in this case—would not be *per se* error. Rather, a defendant must show, *inter alia*, that the "variance caused *substantial* prejudice." *United States v. Tarantino*, 846 F.2d 1384, 1391 (D.C.Cir.1988) (emphasis added). In this case, the Court concludes that the Government's alleged alteration of its theory—effected by its proof only that Kelly abducted Fultz, not for ransom, but "for otherwise"—caused Kelly no substantial prejudice.

■ This is not an instance in which the change in the government's theory subjected the defendant to liability for a different common law *offense*, and thereby wholly misled the defendant as to the proper manner of formulating his defense, as was the case in *United States v. Smolar*, 557 F.2d 13, 18–19 (1st Cir.1977) (theory changed from fraud to breach of fiduciary duty in violation of 15 U.S.C. § 78j and Rule 10b–5). Instead, this is a situation in which the defendant was well aware of the facts upon which the government's case rested, and had been apprised by Counts One and Three that these facts, in the government's view, would support a conviction under the "or otherwise" language. *See. United States v. Weiss*, 752 F.2d 777, 790 (2d Cir. 1985) (court rejected variance argument on grounds, *inter alia*, that "the record clearly establishes that appellant had adequate notice of the nature of the charges against him"); *United States v. Lemire*, 720 F.2d 1327, 1346 (D.C.Cir.1983) (in rejecting variance argument, court stated that "the astute defense counsel knew, or should have known, from the indictment what the government's ultimate legal position was."). Moreover, there can be no question that the acts proven at trial do support a conviction under the "or otherwise" language—Kelly was convicted for acts that constitute "kidnaping" under § 1201(a). *See Lemire*, 720 F.2d at 1346 ("defendants' most persuasive challenge ... must be the possibility that they were convicted under a wrong theory of law, not the technical defense that they suffered from surprise due to variance"); *Boyd v. LeFevre*, 519 F.Supp. 629, 633 (E.D.N.Y.1981) ("Nor is there any question that the set of facts and theory of the case as presented to the jury allowed conviction for conduct that constituted the crimes of sale and possession under New York law."). Thus, in the Court's view, the variance—assuming *arguendo* that one occurred—simply did not work to Kelly's substantial prejudice.

For the foregoing reasons, Kelly's motion for judgment of acquittal shall be, and hereby is, DENIED.[5]

---

4. In this regard, the Court notes that Kelly's counsel raised no objection to the Court's jury instructions, although she was given ample opportunity to do so.

5. The Court also hereby denies Kelly's oral motion for judgment of acquittal as to each count in the indictment, made at the close of all the evidence.