**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael R. GOLAND, Defendant–Appellant.**

No. 90–50423.

United States Court of Appeals, Ninth Circuit.

Oct. 27, 1992.

Before FARRIS, PREGERSON and THOMPSON, Circuit Judges.

## ORDER

A majority of the panel, as constituted above, voted to deny the petition for rehearing and to reject the suggestion for rehearing en banc.

The full court was advised of the suggestion for en banc rehearing. A call for en banc rehearing was made; however, a majority of the active judges of the court did not vote for en banc rehearing. *See* Fed. R.App.P. 35.

The petition for rehearing is DENIED and the suggestion for rehearing en banc is REJECTED.

PREGERSON, Circuit Judge, with whom Circuit Judges TANG, KOZINSKI, and KLEINFELD join, dissenting from denial of rehearing en banc:

The majority views this case as just another criminal case. They view Goland as someone who violated the election laws and got caught. But by failing to take this case en banc, we allow a person to be imprisoned for exercising individual rights that are at the core of the First Amendment. This case raises significant free speech issues and deserves the consideration afforded by our en banc process.

I.

As I explained in my dissent to the majority's opinion, I do not believe that the statute defines Goland's conduct as a criminal offense. Under 2 U.S.C. § 441a(a)(7)(B)(i), "contribution" includes an expenditure "made by any person in cooperation, consultation, or concert, with, or at the request or suggestion of, a candidate, his authorized political committees, or their agents." An "independent expenditure," on the other hand, is made without such cooperation, consultation, or concert. *See* 2 U.S.C. § 431(17). Goland did not cooperate, consult, or work in concert with Vallen on the production of the television commercial in question. Vallen made it clear that he would not accept support from a Zionist source. Vallen did not even know it was Goland who was sponsoring the commercial. For his part, Goland despised Ed Vallen and supported Alan Cranston for his pro-Israel views. Each used the other to pursue his own independent political agenda.

The purpose of the Federal Election Campaign Act ("FECA") was to reduce political corruption by eliminating the purchase of influence by campaign contributors. *Buckley v. Valeo*, 424 U.S. 1, 26, 96 S.Ct. 612, 638, 46 L.Ed.2d 659 (1976) (per curiam). To this end, the Court in *Buckley* upheld limits on campaign contributions because a donation to a candidate is more akin to that candidate's speech rather than the speech of the donor. *Id.* at 20–21, 96 S.Ct. at 635–36. Limits on independent expenditures, however, were struck down because such restrictions would "impose direct and substantial restraints on the quantity of political speech." *Id.* at 39, 96 S.Ct. at 644, *see also id.* at 51, 96 S.Ct. at 650–51. The majority's opinion misapplies the deci-

**1360**

sion in *Buckley*. The television commercial in question was written by Goland. It was Goland's words that Vallen spoke. In fact, Goland refused to make script changes urged by Vallen. Goland was not convicted of simply contributing too much to Vallen's campaign in the form of a monetary donation. He was convicted of buying air time for a commercial that he himself wrote. As such, he was convicted for adding his own political speech to the marketplace of ideas. Such a result was not intended by FECA.

## II.

It is well-settled that questions concerning the ambit of a criminal statute are resolved in favor of lenity. *Dunn v. United States*, 442 U.S. 100, 112, 99 S.Ct. 2190, 2197, 60 L.Ed.2d 743 (1979). No one should be forced "to speculate, at peril of indictment, whether his conduct is prohibited." *Id.*

The terms "coordinated," "consulted," and "concert" in the Federal Election Campaign Act have not been interpreted in any context similar to that presented here. At the least, the scope of § 441a(a)(7)(B)(i) and § 431(17) is ambiguous. The doctrine of lenity should preclude a conviction in this case.

## III.

The ambiguity of the statute is critical here because Goland was charged with a specific intent crime. Thus, his understanding of the statue's meaning is highly relevant to his culpability. At all times, Goland maintained that he intended to make an independent expenditure and not a contribution to Vallen's campaign. Goland's intent was the central issue at trial. Because of the ambiguity regarding the scope of the federal election campaign laws and the excluded evidence relating to Goland's intent, I believe that Goland lacked the requisite mental state to support a conviction for making excessive campaign contributions.

## IV.

This case raises issues of fundamental importance concerning the intersection of criminal conduct and First Amendment rights. Certainly, federal election campaign laws were not meant to apply to one who engages in his own speech as opposed to one who contributes money to the candidate for the candidate's use. Here, the majority sends a man to prison for engaging in political speech. This is the first time that anyone has been imprisoned under FECA. We should have taken this case en banc.