**[J-97-2014][M.O. – Baer, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| COMMONWEALTH OF PENNSYLVANIA, | : | No. 15 EAP 2014 |
|---|---|---|
| | : | |
| Appellant | : | Appeal from the Judgment of Superior |
| | : | Court entered on 12/26/13 at No. 2171 |
| | : | EDA 2012 reversing the judgment of |
| v. | : | sentence entered on 7/24/12 in the |
| | : | Court of Common Pleas, Criminal |
| | : | Division, Philadelphia County at No. |
| WILLIAM LYNN, | : | CP-51-CR-0003530-2011 |
| | : | |
| Appellee | : | ARGUED: November 18, 2014 |

**_DISSENTING OPINION_**

**MR. CHIEF JUSTICE SAYLOR**                    **DECIDED: April 27, 2015**

Because I differ with the majority's interpretation of the endangerment statute reposed in Section 4304(a) of the Crimes Code, I respectfully dissent.

Preliminarily, the evidence viewed favorably to the Commonwealth suggests that Appellee is indeed guilty of gross derelictions which caused widespread harm. The only question before the Court, however, is whether the text of the endangerment statute, as it existed in the pre-amendment timeframe, allowed the imposition of criminal culpability upon Appellee. For the reasons which follow, I would find that it did not.

The statute makes it an offense for a "parent, guardian or other person supervising the welfare of a child" to knowingly endanger a child's welfare by violating a duty of care, protection, or support. 18 Pa.C.S. §4304(a) (1995), _quoted in_ Majority Opinion, _slip op._ at 19. The principal issue in this appeal pertains to the "supervision" element of the pre-amendment offense. The question is whether that element was directed to a person who supervised _other people_ who were responsible for supervising

a child's welfare, since there is little evidence that Appellee directly supervised the welfare of any child at Saint Jerome's Church or elsewhere.

The Crimes Code states that its provisions should "be construed according to the fair import of their terms." 18 Pa.C.S. §105. Where the fair import is not clearly discernible, however, a reviewing court must select the principles that guide its evaluative task. The Crimes Code itself states that, in such instances, "the language . . . shall be interpreted to further the general purposes stated in this title and the special purposes of the particular provision involved." *Id.* Thus, I find the majority's position to be reasonable to the degree it relies on *Commonwealth v. Mack*, 467 Pa. 613, 359 A.2d 770 (1976), as setting forth the "special purposes" of the endangerment statute and construing the statute accordingly.

The difficulty, for me, is that this is not the only guidance we are given. In addition to the above, Section 105 states that the "general purposes" of the Crimes Code should be considered, 18 Pa.C.S. §105, and the Statutory Construction Act requires that, where a penal provision contains an ambiguity, it should be "strictly construed in favor of lenity," *Commonwealth v. Bullock*, 590 Pa. 480, 488, 913 A.2d 207, 212 (2006) (citing 1 Pa.C.S. §1928(b)(1)), meaning that the ambiguity should be resolved in favor of the accused. *See Commonwealth v. Booth*, 564 Pa. 228, 234, 766 A.2d 843, 846 (2001). *See generally Commonwealth v. Wooten*, 519 Pa. 45, 53, 545 A.2d 876, 879 (1988) ("[A]ll penal provisions should be strictly construed, and . . . where an ambiguity exists in the language employed by the legislature in a penal statute, it should be interpreted in a light most favorable to the criminally accused.").

Further complicating the interpretive task, the official comment to Section 105 of the Crimes Code denies what the text assumes, namely, that there can be a genuine ambiguity. *See* 18 Pa.C.S. §105, Official Cmt. ("There is *no valid reason* why penal

statutes should not be reasonably construed according to the fair import of their terms[.]" (emphasis added, internal quotation marks omitted)).  Moreover, the general purposes – which are listed in Section 104 – are multiple and conflicting.  For example, one purpose is to provide fair notice to citizens of the nature of the conduct which the government considers to be criminal.  *See* 18 Pa.C.S. §104(4).[1]  Another is to prevent conduct that unjustifiably inflicts or threatens substantial harm.  *See id.* §104(1).  It can hardly be denied that, over the general course of events in Pennsylvania, there will be instances of harmful conduct the criminalization of which is not substantially clear.  In such cases, these "general purposes" of the Crimes Code are in significant tension.

In light of this multitude of inconsistent, and sometimes conflicting, interpretive principles woven into Pennsylvania law, I find it advisable to utilize, most prominently, the rule of strict construction (or "lenity") in relation to ambiguous criminal provisions. The rule rests on constitutional foundations, *see Dunn v. United States*, 442 U.S. 100, 112, 99 S. Ct. 2190, 2197 (1979) (explaining that application of the rule of lenity is "not merely a convenient maxim of statutory construction," but rather, "it is rooted in fundamental principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited"); *see also United States v. Lanier*, 520 U.S. 259, 266, 117 S. Ct. 1219, 1225 (1997) (describing the lenity rule as a "junior version" of the constitutional void-for-vagueness doctrine which, itself, is based on the fair-warning requirement of the Due Process Clause), and its use is consistent with past practice.[2]  Therefore, I must ultimately disagree with the majority

---

[1] Indeed, this is a due process requirement, *see United States v. Batchelder*, 442 U.S. 114, 123, 99 S. Ct. 2198, 2203 (1979), as discussed below.

[2] *See, e.g., Commonwealth v. Booth*, 564 Pa. 228, 246, 766 A.2d 843, 853 (2001); *Commonwealth v. Allsup*, 481 Pa. 313, 317, 392 A.2d 1309, 1311 (1978); *cf.* (…continued)

opinion to the degree it suggests that the rule of strict construction does not pertain relative to the endangerment statute. *See* Majority Opinion, *slip op.* at 41-42 (implying that the endangerment statute represents an exception to the rule of strict construction); *id.* at 50 (stating that we are "obligat[ed]" to "broadly" construe the endangerment statute).[3]

In the present context, there is, to my mind, substantial doubt that the pre-amendment statute was intended to apply to individuals such as Appellee. It is true that Appellee was obligated to protect children from sexually-abusive priests. However, I find persuasive the Superior Court's explanation that this amounted to a duty on the part of Appellee, which is to be distinguished from supervision. *See Commonwealth v. Lynn*, 83 A.3d 434, 453 (Pa. Super. 2013). Additionally, the two examples provided by the Legislature – parents and guardians – are in a very different position from Appellee relative to the children under their care. *See generally Commonwealth v. Russo*, 594 Pa. 119, 130, 934 A.2d 1199, 1206 (2007) (noting that under the doctrine of *ejusdem generis*, a general phrase "should be construed in light of the particular words preceding it"). Although these factors may not be determinative of legislative intent, they demonstrate the existence of an ambiguity as to whether the pre-amendment statute was meant to subsume supervisors-of-supervisors such as Appellee. That being the

---

(continued…)
*Commonwealth v. Dickson*, 591 Pa. 364, 382, 918 A.2d 95, 106 (2007) (applying strict construction to a mandatory minimum sentence provision of the Judicial Code).

[3] I recognize that the majority's holding is not based on resolution of an ambiguity, but on its determination that the statute by its plain terms encompassed Appellee's conduct. *See* Majority Opinion, *slip op.* at 57. Regardless, any suggestion that a particular criminal provision should be exempted from the general rule of strict construction is likely to lead to inconsistency and confusion in the interpretation of penal provisions going forward – particularly in light of the varied interpretive approaches outlined above.

case, I would resolve the ambiguity in Appellee's favor consistent with the foregoing discussion.

Finally, Appellee cannot, in my view, have been validly convicted as an accomplice because the accomplice statute requires an intent to promote or facilitate the offense in question. *See* 18 Pa.C.S. §306(c), *quoted in* Majority Opinion, *slip op.* at 35 n.20. Although, as observed, Appellee may have been substantially derelict in his obligations, as I read the record there were no facts placed before the jury by which it could reasonably conclude he affirmatively intended that children's welfare be endangered.