UNITED STATES of America,
Plaintiff-Appellee,

v.

Joseph Arthur TIBBS,
Defendant-Appellant.

No. 78–5191.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 28, 1978.
Decided and Filed June 19, 1979.

Rehearing Denied Sept. 4, 1979.

**20**

Carlton H. Petway, Sr. (court-appointed), Nashville, Tenn., for defendant-appellant.

Hal D. Hardin, U. S. Atty., Joe B. Brown, Asst. U. S. Atty., Margaret Huff, Nashville, Tenn., for plaintiff-appellee.

Before CELEBREZZE and MERRITT, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

Defendant was convicted of perjury in violation of 18 U.S.C. § 1623.[1] Pursuant to the provisions of that section, a person is guilty of perjury whenever he knowingly makes, under oath, two or more material declarations, one of which is necessarily false, in any proceeding before or ancillary to any court or grand jury of the United States. 18 U.S.C. § 1623(a), (c). In his appeal, defendant does not dispute that the

statements alleged in the indictment were material declarations, made by him under oath, one of which was necessarily false. Accordingly, the crucial issue before this Court is whether the statements contained in the indictment were made in the course of ". . . proceedings before or ancillary to any court or grand jury of the United States . . . ," within the meaning of section 1623.

The facts of the case are undisputed. On February 15, 1977, defendant was called to testify before a federal grand jury that was investigating narcotics traffic in the State of Tennessee. In his testimony, and while under a grant of immunity, defendant admitted that he had previously acted as a drug courier for a Ronald McKinley, a target of the grand jury investigation. Specifically, defendant referred to several drug-related trips he had made to California in the years 1974 and 1975, and he detailed a series of incidents in which he connected Ronald McKinley with illegal drug traffic. Two days after he had given his grand jury testimony, on February 17, 1977, defendant talked to the attorney who represented McKinley, a Mr. Vincent, in Vincent's law office. In the course of their conversation, Vincent informed defendant that he was under no obligation to speak and that anything he said would probably be used in court if McKinley was brought to trial. In

---

1. Following a jury trial in the district court, defendant was convicted under a two-count indictment of perjury in violation of 18 U.S.C. § 1623 and of making false statements in an affidavit in violation of 18 U.S.C. § 1001. The trial judge granted a judgment of acquittal as to the second count.

18 U.S.C. § 1623(a) provides that:
"(a) Whoever under oath in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information . . . knowing the same to contain any false material declaration, shall be fined not more than $10,000 or imprisoned not more than five years, or both."
18 U.S.C. § 1623(c) provides a statutory method of charging a witness with a violation of § 1623(a):
"(c) An indictment or information for violation of this section alleging that, in any pro-

ceedings before or ancillary to any court or grand jury of the United States, the defendant under oath has knowingly made two or more declarations, which are inconsistent to the degree that one of them is necessarily false, *need not specify which declaration is false* . . . ."
Additionally, § 1623(c) sets forth a method of proving false declarations:
"In any prosecution under this section, the falsity of a declaration set forth in the indictment or information shall be established sufficient for conviction by proof that the defendant while under oath made irreconcilably contradictory declarations material to the point in question in any proceeding before or ancillary to any court or grand jury."
Thus, under § 1623(c), the government need not prove through extrinsic evidence which of two or more declarations is false. Rather, the falsity of one of the declarations will be inferred from its inconsistency with the other(s).

spite of these warnings, defendant told Vincent that most of his grand jury testimony was not true. Further, at Vincent's request, defendant swore to and signed an affidavit in which he explicitly recanted many of his grand jury statements. A short time after the February 17 meeting between defendant and Vincent, the grand jury handed down an indictment against McKinley. Following this indictment, Vincent, acting as McKinley's attorney, presented defendant's affidavit to a federal court in conjunction with a motion to secure a transcript of the grand jury proceedings. Moreover, during the course of McKinley's trial on the indictment, the government called defendant as a witness to testify outside the presence of the jury. When the government questioned defendant on the subsequent retraction of his grand jury statements, defendant, under oath, affirmed and adopted the contents of his February 17 affidavit.

█ In arguing to this Court that defendant made inconsistent declarations in a "proceeding before or ancillary to a [federal] court or grand jury," the government reasons, first, that the events in Vincent's law office on February 17, in and of themselves, amounted to a "proceeding" that was "ancillary to" the grand jury that had heard defendant's testimony two days earlier. We disagree. Congress did not define the term "ancillary proceeding" in section 1623, and the courts have seldom construed its meaning. Nonetheless common experience indicates that every proceeding, including an ancillary proceeding, must incorporate certain notions of formality and convention.[2] Consistent with these notions, an action conducted by a judicial representative or an action conducted pursuant to explicit statutory or judicial procedures may properly be considered an "ancillary proceeding." *See, e.g., United States v.*

*Krogh,* 366 F.Supp. 1255, 1256 (D.D.C.1973) (a sworn deposition taken in the offices of an Assistant Attorney General was a proceeding ancillary to the Watergate Grand Jury). However, an impromptu conversation between an individual and an attorney in the attorney's office inherently lacks the formality and convention required. These missing elements cannot be supplied by the administration of an oath, the signing of an affidavit, or the disclosure of the affiant's rights and potential liabilities. *Accord, United States v. Dunn,* 577 F.2d 119 (10th Cir. 1978), *rev'd on other grounds,* — U.S. ——, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979).[3] Likewise, the fact that the attorney informs the affiant that his statement may later be used in court does not, in any way, effect the nature of their actions.

█ The government reasons, next, that even if all the elements of section 1623 were not established when defendant and Vincent met on February 17, they were subsequently established when Vincent presented defendant's affidavit to a federal district court. We again disagree. To make a case under section 1623, the government is required to prove that the accused himself has made inconsistent declarations within the course of a proceeding before a United States court or grand jury, or in a proceeding ancillary thereto.

"In any prosecution under this section, the falsity of a declaration set forth in the indictment or information shall be established sufficient for conviction by proof that *the defendant while under oath made irreconcilably contradictory declarations material to the point in question in any proceeding* before or ancillary to any court or grand jury."

18 U.S.C. § 1623(c) (emphasis added). Pursuant to this section, a sworn affidavit that is submitted to a federal court by an individual or his authorized agent may properly

---

2. In *Black's Law Dictionary* (4th Ed. 1968), the word "proceeding" is defined as ". . . the form and manner of conducting juridical business before a court or judicial officer . . . ," and the term "ancillary proceedings" is defined as "one subordinate to or in aid of another primary action."

3. The final draft of this opinion was submitted to the printer prior to the Supreme Court's announcement of its decision in *United States v. Dunn,* — U.S. ——, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979).

subject that individual to a perjury prosecution. *See, e. g., United States v. Stassi,* 443 F.Supp. 661 (D.N.J.1977), aff'd., 583 F.2d 122 (3rd Cir. 1978). However, the affidavit in the present case was not submitted to a federal court either by defendant or by his authorized agent. When Vincent filed his motion with the district court to obtain a transcript of the grand jury proceedings, he was acting exclusively as the legal representative of the grand jury target, Ronald McKinley. Although defendant had been previously informed that Vincent might take such action, the evidence does not suggest that defendant gave any type of authorization on which a perjury conviction could be based. Section 1623 cannot be expanded to reach every defendant who, at any time and in any place, swears to inconsistent statements that are later presented in federal court without the defendant's express authorization.

■■■ The indictment below did not mention the fact that defendant had affirmed and adopted the contents of his February 17 affidavit at the trial of Ronald McKinley. Nonetheless, the government introduced a stipulation to this effect at defendant's trial. The admission of this stipulation into evidence cannot now be used to support defendant's conviction. Such evidence was outside the scope of the indictment and its employment created a material variance in the proofs at trial. It is well-settled that a variance between an indictment and evidence is fatal if the accused is misled to his prejudice or if the accused is exposed to the danger of double jeopardy. *United States v. Enright,* 579 F.2d 980, 988 (6th Cir. 1978); *Stone v. Wingo,* 416 F.2d 857, 864 (6th Cir. 1969). However, we need not decide whether the admission of the stipulation in question misled defendant to his prejudice because receipt of the stipulation placed defendant in the danger of double jeopardy. As indicated, defendant was convicted of committing perjury either on February 17 or later when Vincent presented defendant's affidavit to a federal court. Thus, consistent with the

indictment, defendant could subsequently have been indicted for, and convicted of the separate offense of committing perjury when he testified at the trial of Ronald McKinley. Because defendant's testimony at the McKinley trial would have formed the basis of such subsequent indictment, the use of this testimony to support the charges actually contained in the indictment below placed defendant in the danger of being tried twice for the same offense. *Cf. United States v. Dunn,* —— U.S. ——, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979).[4]

The judgment of the district court is vacated, and the case is remanded to the district court for dismissal of the indictment.

MERRITT, Circuit Judge, concurring.

The recently decided case of *Dunn v. United States,* —— U.S. ——, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979), is squarely in point and disposes of the issue presented in this case. The same question, arising under the same criminal statute, based on the same variance between the indictment and the proof, is presented in both this and the *Dunn* case. I concur for the reason that the *Dunn* case controls our decisions here.