**UNITED STATES of America, Plaintiff,**

v.

**Guillermo JARAMILLO, Defendant.**

**No. CR 93–0418 BAC.**

United States District Court,
N.D. California.

Jan. 13, 1994.

Jeffrey L. Bornstein, Asst. U.S. Atty., San Francisco, CA, for plaintiff.

Larry Kupers, Asst. Federal Public Defender, San Francisco, CA, for defendant.

## FINDINGS OF FACT AND MEMORANDUM OF LAW

CAULFIELD, District Judge.

Defendant Guillermo Jaramillo is charged with making false statements in a witness statement which he signed under penalty of perjury in lieu of grand jury testimony, and in his testimony in open court after being placed under oath. Title 18 U.S.C. § 1623 prohibits false declarations by anyone under oath or in any declaration as permitted under 28 U.S.C. § 1746 "in any proceeding before or ancillary to any court or grand jury of the United States." The court conducted a court trial on the factual and legal issues on November 17, 1993. The legal issue in this case is whether the witness statement signed under penalty of perjury was ancillary to the then pending grand jury investigation concerning Jose Garcia and his associates.

### FINDINGS OF FACT

In May 1990, Jaramillo was served with two grand jury subpoenas. The first subpoena required his appearance and testimony before the grand jury on May 23, 1990. The second subpoena required his testimony and appearance on May 30, 1990 before the grand jury. Instead of testifying in front of the grand jury as was required and scheduled by the subpoena, Jaramillo provided a formal witness statement to Agent Jean Choy of the Drug Enforcement Agency ("DEA"), and Assistant United States Attorney ("AUSA") Jeffrey L. Bornstein. The agent and the AUSA were conducting the grand jury investigation into allegations of drug dealing by Jose Garcia.

Jaramillo was a limousine driver for Garcia on occasion and voluntarily explained to the agents details about the actions of Jose Garcia which he witnessed involving cash in large amounts, drugs, drug use, weapons, and cellular telephones. On May 24, 1990, Jaramillo gave a written statement under oath and under penalty of perjury. Before signing the written statement, numerous drafts were created by Jaramillo and revisions were made. Jaramillo reviewed these drafts over a period of hours. DEA Special Agent Jean Choy and AUSA Bornstein were both present during the writing of the witness statement.

Agent Choy testified before the grand jury on June 1, 1990 and included in her testimony the factual material provided by Jaramillo in his written statement. Jaramillo was told during the writing of his witness statement that his statement would be used before the grand jury instead of his personal testimony before the grand jury. Jaramillo had indicated a fear of testifying in front of the grand jury. In order to accommodate his concerns, Bornstein and Choy allowed him to give the witness statement instead of personally testifying before the grand jury.

An indictment was returned by the grand jury which heard the testimony of Choy incorporating what Jaramillo had said in his witness statement. Garcia was charged with violations of 21 U.S.C. §§ 841(a)(1), 846, and 848 (respectively, conspiracy to possess with intent to distribute cocaine, possession with intent to distribute cocaine, and continuing criminal enterprise).

Both Choy and Bornstein explained to Jaramillo that his witness statement was subject to the penalty of perjury and would be used to replace his actual testimony before the grand jury for which he was properly subpoenaed because of his reticence to testify in a grand jury proceeding. Jaramillo had received signed subpoenas compelling his person by statutory authority to attend and testify before the grand jury on both May 23 and May 30, 1990. Jaramillo was compelled by statutory authority to attend the grand jury proceeding. Instead, he gave a witness statement which was notarized by a notary

public, corrected numerous times by himself, and signed under penalty of perjury.

On September 21, 1990, Jaramillo was called to testify by subpoena in the criminal trial of Jose Garcia. He waited in the hall outside the Federal Building courtroom and was not called to testify on Friday, September 21, 1990. On September 24, 1990, Jaramillo returned for testimony and took the witness stand in the trial of Jose Garcia. He was placed under oath and asked questions which covered the same matters to which he testified in his May 24, 1990 declaration and witness statement. The court reviewed a transcript of that testimony. Jaramillo testified materially different from his witness statement while under oath on the witness stand in the Jose Garcia trial on September 24, 1990. He testified that his former witness statement was a lie and he testified materially differently about things that he had seen and had stated as true under penalty of perjury in his witness statement.

The witness statement provided on May 24, 1990 by Jaramillo was a 9–page document containing 22 numbered paragraphs. In his sworn statement of May 24, 1990, Jaramillo stated that he "saw a huge stack of money piled on top of a table. It was about two feet high in the shape of a volcano. The money was in stacks of 20's, 50's and 100's and was in separate rubber-band packages, about two inches thick." In his sworn testimony before the jury on September 24, 1990, Jaramillo was asked, "Did you ever see a large amount of money on the table in that house?" Jaramillo answered, "No."

Jaramillo stated under penalty of perjury in the May 24 witness statement that

"sometime in 1989 I asked Jose Garcia to sell cocaine to this guy I met. He was a smaller operator in Hayward. He found out I knew Jose and asked me to get him a couple of kilos at a good price. He told me he'd pay me a couple of hundred dollars. I called Jose and told him I knew this guy who wanted to buy a couple from him. He said, 'You mean tickets for the game this weekend?' I said, 'What?', then I caught on and said, 'yeah, yeah.' "

In his sworn testimony before the jury on September 24, 1990, Jaramillo testified as follows:

Q: Did you ever make any arrangements with Jose Garcia to sell cocaine?

A: Never.

Q: Did you ever ask Jose Garcia to sell cocaine to anyone?

A: No.

During the trial of Jaramillo, the government called DEA Special Agent Richard Plunkett and DEA Agent Jean Choy. The government also introduced Jaramillo's sworn and notarized statement of May 24, 1990 and the transcript of his trial testimony on September 24, 1990. The relevant law, 18 U.S.C. § 1623 provides in pertinent part:

(a) Whoever under oath (or in any declaration, certificate, verification, or statement under penalty of perjury) ... in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration ... shall be fined ... or imprisoned....

\* \* \* \* \* \*

(c) An indictment or information for violation of this section alleging that ... the defendant under oath has knowingly made two or more declarations, which are inconsistent to the degree that one of them is necessarily false, need not specify which declaration was false if—

(1) Each declaration was material to the point in questions, and

(2) Each declaration was made within the period of the statute of limitations for the offense charged under this section.

In any prosecution under this section, the falsity of a declaration set forth in the indictment or information shall be established sufficient for conviction by proof that the defendant, while under oath, made irreconcilably contradictory declarations material to the point in question ... it shall be a defense to an indictment or information made pursuant to the first sentence of the subsection that the defendant at the time he made each declaration believed the declaration was true.

Based on the testimony provided, the court finds that each statement of Jaramillo cited by the court and in the indictment was material to the point of the testimony in question and each declaration was made within the period of the statute of limitations for the offense charged under § 1623.

The court further finds that the Jaramillo declaration of May 24, 1990 was irreconcilably contradictory to material points of Jaramillo's trial testimony. No defense was made by Jaramillo that he believed at the time he made each declaration that the declaration was true. In fact, during his testimony before the jury in the trial of Jose Garcia, Jaramillo indicated that he had lied in his statement given to Agent Choy and Mr. Bornstein and signed under penalty of perjury.

## MEMORANDUM OF LAW

The question before the court (as agreed by both the Assistant Public Defender ("PD") Kupers and AUSA Bornstein in their memoranda of points and authorities concerning the statutory construction of 18 U.S.C. § 1623) is whether the witness statement given by Jaramillo under penalty of perjury, signed and revised before Ms. Choy and Bornstein on May 24, 1990, was a statement made by someone under oath or in any declaration as permitted under § 1746 of Title 28 in "any proceeding before or ancillary to any court or grand jury of the United States." The court has already found that the declarations were materially inconsistent and, therefore, were false declarations which are prohibited by 18 U.S.C. § 1623.

In *Dunn v. United States*, 442 U.S. 100, 99 S.Ct. 2190, 60 L.Ed.2d 743 (1979), the Supreme Court evaluated the formality necessary for the taking of a witness statement (even one given under penalty of perjury) to bring it under the wording of 18 U.S.C. § 1623. The Court in *Dunn* held that a statement to a private attorney was not formal enough to be considered a statement "ancillary" to a court proceeding. The witness interview in *Dunn* lacked sufficient formality because it did not even constitute a formally noticed deposition. *Id.* at 113, 99 S.Ct. at 2197. There was no formal notice of

the proceedings nor of the right of the witness to have counsel present. The witness did not ever certify the transcript of the interview as accurate. *Id.* at 112, 99 S.Ct. at 2197.

In *United States v. Tibbs*, 600 F.2d 19 (6th Cir.1979), the 6th Circuit evaluated a prosecution based on an affidavit obtained by a private attorney which was inconsistent with the witness's grand jury statements. The court in *Tibbs* required "certain notions of formality and convention" in order for a statement to qualify as ancillary to a proceeding under § 1623. The court required that "an action [be] conducted by a judicial representative or an action [be] conducted pursuant to specific statutory or judicial procedures [to be] properly considered an ancillary proceeding." *Id.* at 21. The court in *Tibbs* examined an impromptu conversation between an individual and an attorney in the attorney's office and found that the conversation inherently lacked the formality and convention required. The court in *Tibbs* cited a district court opinion, *United States v. Krogh*, 366 F.Supp. 1255 (D.D.C.1973), where the district court refused to dismiss a perjury indictment based in part on a sworn deposition taken in the offices of an assistant attorney general because the court held that the deposition taken in the offices of the assistant attorney general was a proceeding ancillary to the ongoing Watergate grand jury inquiry. *Id.* at 1256. The court found that the questions asked in the deposition were "highly material to the grand jury inquiry then in progress." *Id.* The court also found that the grand jury received the witness statement.

■ This case presents a new question about the amount of formality required for a statement to qualify as ancillary to any court or grand jury proceeding of the United States under § 1623. It is admitted by both sides that the witness statement by Jaramillo was not given as part of a formal deposition as the statement was given in *Krogh*. However, it was not as informal as a mere affidavit, nor was it a statement to a private attorney in the presence of a notary public. The statement in this case was a statement to government agents in response to a grand

jury subpoena, under oath, and with certification by the witness and a notary public.

■ All the cases, especially *Dunn,* require a court to evaluate the level of formality demonstrated by the circumstances under which the witness statement was given. If the witness statement lacks sufficient formality, then the statement cannot be the basis for a prosecution or conviction under § 1623. The circumstances of the witness statement given by Jaramillo include the following: (1) a subpoena compelling his presence by a government agent with special statutory authority to investigate and compel attendance, (2) the presence of an Assistant U.S. Attorney, who is required to act as an attorney only in the interests of the U.S. government in proceedings relevant to government prosecutions, and (3) the presence of a DEA agent acting under statutory authority to investigate and take witness statements. The statement was given in conjunction with an ongoing grand jury investigation which was known both to Jaramillo and the government agents present during the witness statement. There was no surprise to Jaramillo in the reason for his presence at the office of the AUSA. He fully expected to testify before the grand jury, but was given the alternative of testifying under penalty of perjury in a witness statement which he understood would be presented to the grand jury factually by Agent Choy.

The statement was not taken by a court reporter in a formal deposition, but was given as a result of notice for a formal grand jury proceeding. The statement was given under penalty of perjury and notarized by a notary public. The witness had lengthy and numerous opportunities to review the statement and make any changes appropriate and, in fact, the witness did make numerous changes and go through numerous drafts of the witness statements. Jaramillo certified that the final witness statement was accurate.

■ The Supreme Court in *Dunn* required that § 1623 should encompass statements made in contexts that are *as formal* as a deposition. *Id.* 442 U.S. at 113, 99 S.Ct. at 2197. The defense argues that nothing that is not a formal deposition, *per se,* may qualify as a witness statement which can subject a defendant to a prosecution under § 1623. This court finds that if all the requisite formality requirements, as outlined by the Supreme Court in *Dunn* are met by the circumstances under which the statement is given, then the statement can qualify as a statement ancillary to a proceeding under § 1623. This court must evaluate the formality of the circumstances under which Jaramillo gave his witness statement to the AUSA and DEA Agent Choy.

In *Dunn,* the Court was concerned about these particular requisites of formality: (1) a court order authorizing the deposition; (2) receipt of formal notice of the proceedings by the petitioner; and (3) receipt of formal notice by the petitioner of his right to have counsel present; and (4) certification by the petitioner that the transcript of the interview was accurate. In the present case, grand jury subpoenas compelled Jaramillo's presence by statutory authority. This court finds that those subpoenas imbue the subsequent meeting with the same notice formality as a court order authorizing the deposition. Jaramillo, who received the signed subpoenas, received formal notice of the proceedings. He was apprised on numerous occasions of his right to have counsel present and indeed waived that right as a cooperating witness with the United States Government. Jaramillo certified the accuracy of the witness statement by changing drafts of the statement until it met his complete satisfaction. He then signed the statement under penalty of perjury. The formality of speaking to an AUSA and a DEA agent under the circumstances of this case is a very different formal setting from speaking to a private attorney without benefit of any statutory authority requiring a private citizen to be in that private attorney's office. In the case of *Dunn* and *Tibbs,* the statements were taken by private counsel without any statutory authority or formal notice, such as signed grand jury subpoenas.

The Court in *Dunn* was also concerned about contravening the Court's "long established practice of resolving questions concerning the ambit of a criminal statute in favor of lenity." *Dunn* at 112, 99 S.Ct. at

2197. The Court required that courts "decline to impose punishment for actions that are not 'plainly and unmistakenly' proscribed." *Id.* The *Dunn* court concluded that Congress did not intend that "section 1623 should encompass statements made in contexts less formal than a deposition." *Id.* at 113, 99 S.Ct. at 2197.

This court finds that the circumstances of the statement given by Jaramillo were as formal as a deposition and, therefore, meet the requirements of the *Dunn* court for formality and also meet the requirements of special clarity required for the boundaries of criminal conduct as expressed in § 1623. The *Dunn* court's concern about authorization for taking the statement by court order, formal notice of the proceedings, and certification of the transcript are all met by the facts in this case. A formal deposition is not the only way that the statute can be violated, as long as the circumstances of the taking and giving of the statement are *as formal* as a deposition.

 Jaramillo clearly knew that the matter was both formal, serious, and under penalty of perjury. He understood that his statements were going to be reported and testified to by Agent Choy before the grand jury investigating Jose Garcia. This circumstantial formality and uncontradicted understanding of Jaramillo makes his statements, based on the factual findings by this court, a violation of § 1623. The only circumstance which is different from those circumstances described in *Dunn* is the presence of a court reporter to transcribe the statement. The witness, however, had more opportunities to correct the statement as it was written under his supervision than would have been possible with a court reporter. A notary public certified the signature and that the statement was made under oath. Therefore, the absence of the court reporter alone does not disqualify Jaramillo's statement from meeting the formality requirements of *Dunn* where the other circumstances clearly provide the indicia of formality required by *Dunn.*

 There are many courts who receive testimony subject to electronic reporting and later transcription, and depositions with court permission are taken by electronic reporting with later transcription. The *per se* presence of a court reporter no longer defines the formality of a statement or testimony. All the circumstances of the witness statement are considered by the court to determine the formality of the statement. The statement of Jaramillo meets the formality requirements of *Dunn.*

### CONCLUSION

For the reasons state above, the court finds Guillermo Jaramillo guilty of the crimes charged in the indictment.

IT IS SO ORDERED.