UNITED STATES of America,
Plaintiff–Appellee,

v.

Guillermo JARAMILLO, Defendant–
Appellant.

No. 94–10563.

United States Court of Appeals,
Ninth Circuit.

Submitted Oct. 16, 1995.*

Decided Nov. 2, 1995.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Larry Kupers, Assistant Federal Public Defender, San Francisco, California, for defendant-appellant.

Jeffrey L. Borstein, Assistant United States Attorney, San Francisco, California, for plaintiff-appellee.

Before: PREGERSON and FERNANDEZ, Circuit Judges, and McLAUGHLIN,** District Judge.

McLAUGHLIN, District Judge:

Guillermo Jaramillo appeals his conviction for making false declarations under 18 U.S.C. § 1623(c). We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse.

## I

### Standard of Review

The district court's statutory interpretation is reviewed *de novo. United States v. Polizzi,* 801 F.2d 1543, 1547 (9th Cir.1986). A district court's factual findings are reviewed for clear error. *United States v. Schmidt,* 573 F.2d 1057, 1066 (9th Cir.), *cert. denied,* 439 U.S. 881, 99 S.Ct. 221, 58 L.Ed.2d 194 (1978).

## II

### Background

Drug Enforcement Agency ("DEA") agents approached Appellant Guillermo Jaramillo to request his assistance in their investigation of drug trafficking activities by one Jose Garcia. Jaramillo signed an agreement to become a confidential informant.

Throughout the Garcia investigation, Jaramillo insisted that he did not want to testify at trial. The DEA agents, however, told Jaramillo that they might call him as a witness.

Twice, at meetings in the U.S. Attorney's office, DEA agents served Jaramillo with grand jury subpoenas. He balked both times. The government and Jaramillo then reached a compromise whereby Jaramillo agreed to furnish a witness statement for the Government to present to the grand jury.

On May 24, 1990, in the presence of a DEA agent and an assistant U.S. attorney, Jaramillo was given a witness statement to sign under penalty of perjury. Jaramillo read the statement, made corrections, and reviewed various drafts. The assistant U.S. attorney told Jaramillo that if he lied he would be prosecuted for perjury. Jaramillo signed the statement. A notary public acknowledged Jaramillo's signature.

Jaramillo later testified, under oath, at the Jose Garcia trial. Jaramillo refuted the information he had previously given to DEA agents. When confronted with the May 24, 1990 witness statement, Jaramillo testified that the statement was "a lie," he had been threatened by government agents, and he made up the statement based on the movie "Scarface."

Jaramillo was indicted under 18 U.S.C. § 1623 for making false declarations before a grand jury or court. The indictment charged that Jaramillo, after having been placed under oath in open court and after having signed a declaration under penalty of perjury, made two or more material statements, which were inconsistent to the degree that one of them was necessarily false, namely:

(1) In his May 24, 1990 witness statement, Jaramillo stated that he saw the following:

a huge stack of money piled on top of a table ... about two feet high in the shape of a volcano. The money was in stacks of 20's, 50's and 100's and was in separate rubberband packages, about 2″ thick.

At the Garcia trial, Jaramillo testified as follows:

Q: "Did you ever see a large amount of money on the table in that house?"

A: "No."

[ER 13]

(2) In his witness statement, Jaramillo stated,

** The Honorable Linda Hodge McLaughlin, United States District Judge for the Central District of California, sitting by designation.

I went to Garcia's house and he was in his garage. He had a big cardboard carton that was stuffed with newspaper. He was removing the newspaper and then taking out the packages that were inside. They were brown and wrapped in shiny brown tape and marked with a black squiggly line.... I then realized it must be cocaine.

At trial, Jaramillo testified as follows:

Q: "Have you ever seen Jose Garcia with any cocaine?"

A: "No."

[ER 14–15]

(3) In his witness statement, Jaramillo stated,

Sometime in 1989 I asked Jose Garcia to sell cocaine to this guy I met.... I called Jose and told him I knew this guy who wanted to buy a couple from him. He said, "You mean tickets for the game this weekend?" I said, "What?", then I caught on and said, "yeah, yeah."

At trial, Jaramillo testified as follows:

Q: "Did you ever make any arrangements with Jose Garcia to sell cocaine?"

A: "Never."

Q: "Did you ever ask Jose Garcia to sell cocaine to anyone?"

A: "No."

[ER 17]

At his own trial with jury waived, Jaramillo offered no evidence. Instead, he moved for judgment of acquittal under Fed. R.Crim.P. 29 on the ground that his witness statement could not be the basis for a false-declaration conviction because the statement was neither "under oath" nor "ancillary" to grand jury proceedings, as required by 18 U.S.C. § 1623(c).

The motion was denied and the district court entered a judgment of guilty with detailed findings of fact and conclusions of law. *United States v. Jaramillo*, 841 F.Supp. 951, 956 (N.D.Cal.1994). The district court then granted Jaramillo's motion for bail pending appeal. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

## III

### Analysis

#### A. The "Inconsistent Declarations" Theory

Under 18 U.S.C. § 1623(a), the government must prove the falsehood of a declaration beyond a reasonable doubt in order to obtain a conviction. In contrast, the "inconsistent declarations" subsection provides that a defendant may be convicted of making a false declaration if he or she has made two irreconcilably contradictory declarations such that one of them is necessarily false. 18 U.S.C. § 1623(c). It is not necessary for the government to prove which of the two contradictory declarations is false. 18 U.S.C. § 1623(c); *see also Dunn v. United States*, 442 U.S. 100, 108, 99 S.Ct. 2190, 2195, 60 L.Ed.2d 743 (1979).

To take advantage of § 1623(c)'s lesser requirement of proof, the government must demonstrate, *inter alia*, that both contradictory declarations are within the scope of 18 U.S.C. § 1623(c).

#### B. The "Under Oath" Requirement

The language of § 1623(a), as amended in 1976, differs from the language of § 1623(c) in that the former expressly covers statements made "under oath (or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under [28 U.S.C. § 1746]) ..." whereas § 1623(c) specifically covers only those declarations made "under oath." Jaramillo's trial testimony was given under oath and, therefore, is subject to § 1623(c). Jaramillo contends that his witness statement was not given under oath and, accordingly, that his conviction should be reversed.

The issue is whether the alternatives specified in § 1623(a) also apply to § 1623(c), *i.e.*, whether statements made "in any declaration, certificate, verification, or statement under penalty of perjury as permitted under [28 U.S.C. § 1746]," but not under oath, are nonetheless covered by § 1623(c).

We have held that "[w]hen Congress includes a specific term in one section of a statute but omits it in another section of the same Act, it should not be implied where it is

excluded." *Arizona Elec. Power Co-op. v. United States*, 816 F.2d 1366, 1375 (9th Cir. 1987); *see also West Coast Truck Lines, Inc. v. Arcata Community Recycling Ctr.*, 846 F.2d 1239, 1244 (9th Cir.1988), *cert. denied*, 488 U.S. 856, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988). Applying this principle of statutory construction to § 1623(a) and § 1623(c), both inconsistent declarations must be made "under oath" to be within the scope of § 1623(c).

Appellee argues that this interpretation of § 1623(c) is contrary to Congressional intent. In *Dunn, supra*, the Supreme Court explained that in enacting § 1623, Congress intended to make it *easier* to prosecute perjurers. "By relieving the Government of the burden of proving which of two or more inconsistent declarations was false, *see* § 1623(c), Congress sought to afford 'greater assurance that testimony obtained in grand jury and court proceedings will aid the cause of truth.'" *Dunn*, 442 U.S. at 108, 99 S.Ct. at 2195. Therefore, Appellee argues, subsection (c) provides merely an alternative *method* of proving false declarations under subsection (a). In other words, whenever two or more statements, both of which are within the scope of subsection (a), are so contradictory that one of them is necessarily false, Congress intended to relieve the government of the burden of proving which is the false statement. Hence, the argument goes, the scope of subsections (a) and (c) is identical.

We find Appellee's argument unpersuasive. First, a conclusion that Congress intended subsections (a) and (c) to be identical in scope runs contrary to the language of the statute. We have held that "[t]he primary indication of [Congress'] intent is the language of the statute." *United States v. Aguilar*, 21 F.3d 1475, 1480 (9th Cir.1994), *aff'd in part, rev'd in part on other grounds*, —— U.S. ——, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995). Had Congress intended the "under oath" requirement of subsections (a) and (c) to be identical in scope, it could have added the alternatives specified in § 1623(a) to § 1623(c).

Second, Appellee's position is inconsistent with the Court's approach in *Dunn*. In holding that § 1623 does not "encompass statements made in contexts less formal than a deposition," *Dunn*, 442 U.S. at 113, 99 S.Ct. at 2197, the Court in *Dunn* explained that "since Congress was aware that statements under oath were embraced by the federal perjury statute without regard to where they were given, the choice of less comprehensive language in § 1623 does not appear inadvertent." *Id.*, at 109, 99 S.Ct. at 2195 (footnote omitted). Similarly, since Congress was aware that statements other than those given under oath were embraced by § 1623(a), Congress' choice of less comprehensive language in § 1623(c) does not appear inadvertent. Rather, it reflects Congressional intent that subsection (c) sweep less broadly than subsection (a).

Finally, a plain reading of the statute provides the more logical result. As discussed, *supra*, under 28 U.S.C. § 1623(c), the government need not prove beyond a reasonable doubt that either statement taken separately is false. This lesser standard of proof suggests that Congress intended, in amending the "under oath" requirement in subsection (a) and not in subsection (c), to retain in the latter subsection the safeguard requiring that a person give the two contradictory statements under oath.

Because § 1623(c) specifically uses only the language "under oath," we hold that 18 U.S.C. § 1623(c) means what it says, namely, that § 1623(c) applies only when both of the contradictory statements were made "under oath."

### C. Whether the Witness Statement Was Made "Under Oath"

▮ The evidence in this case shows irreconcilable contradictions between Jaramillo's testimony at the Garcia trial and his May 24, 1990 witness statement. Jaramillo does not dispute that he testified under oath. The issue is whether his witness statement was also given under oath.

The district court found that "[a] notary public certified the signature and that the statement was made under oath." *Jaramillo*, 841 F.Supp. at 956. However, there is no evidence in the record to support this finding. Although the record reflects the assistant U.S. attorney advised Jaramillo that he was required to be truthful, if he lied "he

**392**

could be prosecuted under penalty of perjury," and he "would have to swear under oath," there is no evidence that an oath was ever administered. The assistant U.S. attorney's warning that Jaramillo could be prosecuted for perjury is not an administration of an oath. Furthermore, nothing in the witness statement itself indicates that it was made under oath, or that Jaramillo was sworn. *Cf. United States v. Yoshida*, 727 F.2d 822, 823 (9th Cir.1983) (finding oath where notary public affixed a jurat stating "Subscribed and sworn to before me ..." and the document began with the words "DENNIS YOSHIDA, being first duly sworn, ..."). Finally, the notary public's acknowledgment does not certify that the attached document was executed under oath. Under California law, a notarial acknowledgement certifies only the *identity* of the signer. Cal.Civ.Code § 1185(a).

Jaramillo also contends that his witness statement was not given in an "ancillary" proceeding. Because we hold that a statement must be under oath to come within the scope of § 1623(c), we do not reach the merits of Jaramillo's second contention. Also, we expressly withhold our approval of the district court's conclusion that Jaramillo's statement was given in an "ancillary" proceeding under § 1623(c). *See Dunn*, 442 U.S. at 113, 99 S.Ct. at 2197.

We conclude that the district court's finding that Jaramillo's witness statement was made "under oath" is not supported by the evidence. Consequently, the government proved only that there was a contradiction between testimony given under oath and a statement that was not given under oath. Because the government must show both contradictory statements were made under oath and the government failed to do so, Jaramillo's conviction for making false declarations under 18 U.S.C. § 1623(c) is REVERSED, and *United States v. Jaramillo*, 841 F.Supp. 951 is VACATED.

REVERSED.