

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1049-16

**TEODORO MIGUEL HERNANDEZ, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANTS'S MOTION FOR REHEARING
### AFTER OPINION ON DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### HAYS COUNTY

HERVEY, J., delivered the opinion of the Court in which KEASLER, ALCALA, YEARY, NEWELL, and KEEL, JJ., joined. KELLER, P.J., and RICHARDSON and WALKER, JJ., concurred without opinion.

### OPINION ON REHEARING

In two counts of a three-count indictment, Appellant, Teodoro Hernandez, was charged with aggravated assault with a deadly weapon and family-violence assault by strangulation. The aggravated-assault-with-a-deadly-weapon count alleged that Hernandez struck the victim on her head or body with his hands while he exhibited or used water as a deadly weapon. The evidence showed that Hernandez struck the victim on

her head or body and that he strangled her, but it showed that he poured water down her throat while he was strangling her, not while he was striking her. The court of appeals held that the evidence was insufficient to sustain the aggravated-assault-with-a-deadly-weapon conviction, but on original submission, this Court reversed the judgment of the court of appeals and ordered Hernandez's aggravated-assault-with-a-deadly-weapon conviction reinstated.

After we issued our opinion, Hernandez filed a timely motion for rehearing, which we granted. The State did not respond to Hernandez's motion for rehearing.

## THE INDICTMENT

The multi-count indictment in this case states that,

### COUNT 1-A
### [AGGRAVATED SEXUAL ASSAULT]

[Hernandez] [d]id then and there intentionally or knowingly cause the penetration of the female sexual organ of Melanie Molien by [his] finger, without the consent of Melanie Molien, and in the course of the same criminal episode the defendant attempted to cause the death of Melanie Molien by strangulation and waterboarding.

### COUNT 1-B & C
### [AGGRAVATED SEXUAL ASSAULT]

[Hernandez] [d]id then and there intentionally or knowingly cause the penetration of the female sexual organ of Melanie Molien by [his] finger, without the consent of Melanie Molien, and [Hernandez] did then and there by acts or words threaten to cause, or place, Melanie Molien in fear that death or serious bodily injury would be imminently inflicted on Melanie Molien, and said acts or words occurred in the presence of Melanie Molien.

### COUNT 1-D
### [AGGRAVATED SEXUAL ASSAULT]

[Hernandez] [d]id then and there intentionally or knowingly cause the

penetration of the female sexual organ of Melanie Molien by [his] finger, without the consent of Melanie Molien, and in the course of the same criminal episode [Hernandez] used or exhibited a deadly weapon, to-wit: water.

## COUNT 2
### [AGGRAVATED ASSAULT WITH A DEADLY WEAPON]

[Hernandez] [d]id then and there intentionally, knowingly, or recklessly cause bodily injury to Melanie Molien by striking the victim's head or body with [his] hands, and the defendant did then and there use or exhibit a deadly weapon, to-wit: water, during the commission of said assault.

## COUNT 3
### [ASSAULT FAMILY VIOLENCE/STRANGULATION]

[Hernandez] [d]id then and there intentionally, knowingly, or recklessly cause bodily injury to Melanie Molien, a person with whom the defendant has or has had a dating relationship, by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of Melanie Molien by applying pressure to the throat or neck and blocking the nose or mouth of Melanie Molien.

The jury found Hernandez guilty of aggravated assault with a deadly weapon "as alleged in the indictment" and guilty of the lesser-included offense of sexual assault, but it acquitted him of family-violence assault by strangulation. The jury recommended that Hernandez be placed on community supervision for 10 years for the sexual-assault offense, but it sentenced him to seven years' confinement for the aggravated-assault-with-a-deadly-weapon offense.

## THE COURT OF APPEALS

The court of appeals rejected the State's argument that assault is a continuous offense, instead holding that the State was bound to prove that Hernandez exhibited or used water as a deadly weapon either before or while he struck her on her head or body

with his hands. *Hernandez v. State*, No. 06-15-00167-CR, 2016 WL 4256938, at \*1 (Tex. App.—Texarkana Aug. 5, 2016), *rev'd*, 2017 WL 4675371 (Tex. Crim. App. Oct. 18, 2017). Finding that the evidence did not support those allegations, it further held that Hernandez's conviction for aggravated assault with a deadly weapon could not stand. *Id.* According to the court of appeals, because the evidence was insufficient, the proper remedy was to reform Hernandez's conviction for aggravated assault to reflect a conviction for simple assault and to remand the case to the trial court for a new punishment hearing. *Id.* at \*9.

## ON ORIGINAL SUBMISSION

We granted the State's petition for discretionary review. The State again argued that there was no variance because assault is a continuing offense and that the evidence to support the deadly weapon allegation was sufficient because it showed that Hernandez struck Molien and that he poured water down her throat while he choked her. *Hernandez*, 2017 WL 4675371, at \*3. We declined to resolve the case on that ground. *Id.* Instead, we decided that, even if the State had to prove two separate assaults, it was not required to prove the manner and means alleged in the aggravated-assault-with-a-deadly-weapon count. *Id.* at \*4. We reasoned that the manner-and-means allegation is not included in the hypothetically-correct jury charge because the statute is result-oriented, and consequently, the allegation should be disregarded in a *Jackson* sufficiency analysis. Applying our reasoning, we held that the variance between how the manner-and-means allegation was

pled and proven was immaterial because it was a non-statutory allegation that did not describe a unit of prosecution. *Id.* We also noted that Hernandez was not potentially subject to being subsequently prosecuted for the same aggravated-assault-with-a-deadly-weapon offense as alleged in the indictment because our analysis did not convert the offense alleged into an entirely different offense. *Id.*

Addressing the lower court's sufficiency analysis, we concluded that it erred when it limited its analysis to the manner and means alleged in the aggravated-assault count—i.e., that Hernandez struck Molien while using water as a deadly weapon. *Id.* When *all* of the evidence was examined, we explained, it showed that the strangulation assaultive event involved the use of water as a deadly weapon, which was sufficient to affirm the aggravated-assault-with-a-deadly-weapon conviction. *Id.*

## ANALYSIS

### a. Unit of Prosecution

On rehearing, Hernandez first argues that this Court violated his due process and double jeopardy rights on original submission by incorrectly applying the hypothetically-correct-jury-charge doctrine. He asserts that, on original submission, this Court relied on *Johnson v. State*, 364 S.W.3d 292 (Tex. Crim. App. 2012) to hold that the manner and means alleged (striking with hands and impeding of breathing by applying pressure to the throat or neck) were immaterial to the legal sufficiency analysis, but *Johnson* held that the manner and means are immaterial only when they do not "define or help define the

allowable unit of prosecution." *Id.* at 298. Here, Hernandez argues, the factual allegations are material because they define the allowable units of prosecution for the two separate assaults. Hernandez contends this is because it is "only by looking at the manner and means that the litigants were able to distinguish one unit of prosecution from the other," and "[r]emoving the striking and replacing it with choking switches units of prosecution."

Hernandez is mistaken. Unless the legislature expressly defines an allowable unit of prosecution for a particular criminal offense, the gravamen or gravamina of the offense best describe the allowable unit of prosecution. *Garfias v. State*, 424 S.W.3d 54, 61 (Tex. Crim. App. 2014). The legislature has not expressly defined the unit of prosecution for aggravated assault with a deadly weapon, but we have determined that the offense is result oriented and that the gravamina of the offense are the victim and the bodily injury that was inflicted. *Johnson*, 364 S.W.3d at 298, n.45. Consequently, because the manner and means by which an aggravated assault is effectuated is not a unit of prosecution for aggravated assault, nor does it describe a unit of prosecution for aggravated assault, the manner-and-means allegation is not included in the hypothetically-correct jury charge and should be disregarded in a legal-sufficiency analysis. We reaffirm our conclusion on original submission that, assuming that the State had to prove two offenses, under *Johnson*, the variance between the manner-and-means alleged in the aggravated-assault-with-a-deadly-weapon count and the proof at trial is only an immaterial non-statutory

allegation.[1]

To the extent that Hernandez argues that our decision on original submission violated his double-jeopardy rights, we disagree. The State can readily determine by resort to the indictment, the jury charge, and the jury's verdict forms, that Hernandez was charged with, and convicted of, aggravated assault with a deadly weapon when he struck Molien with his hands while he exhibited or used water as a deadly weapon. *Hernandez*, 2017 WL 4675371, at *4. It need not refer to the evidence. However, in the unlikely event that the State nonetheless attempts to reprosecute Hernandez for the same offense, the entire record is available to vindicate a subsequent-prosecution claim. *Gollihar v. State*, 46 S.W.3d 243, 258 (Tex. Crim. App. 2001).

### b. Due Process Right to Notice

Hernandez also appears to complain that our analysis on original submission violated his due-process right to notice because he was not able to prepare a meaningful

---

[1]In *Johnson*, we also stated that,

> Had the State pled and proved different injuries, a question might arise as to whether the difference between what was pled and what was proved was significant enough to be material. Separate crimes of aggravated assault could be based upon separately inflicted instances of bodily injury.

*Johnson*, 364 S.W.3d at 298. That statement is not implicated in our analysis. If we assume that two offenses were alleged, the State nonetheless did not plead and prove different injuries, i.e., it did not allege a specific bodily injury and prove a different bodily injury in either count; instead both counts cited only "bodily injury." *Hernandez*, 2017 WL 4675372, at *4.

defense.[2] Although it is possible that a defendant might be entitled to a new trial due to a lack of notice based on a variance,[3] we are not persuaded such is the case here. Hernandez knew that he was accused of striking Molien, strangling Molien, and pouring water down her throat that night, but he categorically denied that he ever put his hands on her neck or that he poured water down her throat. Even if the indictment stated that Hernandez exhibited or used water as a deadly weapon while he strangled Molien, as he claims it should have, there is no reason to believe that he would have suddenly shifted course and admitted to strangling Molien or exhibiting or using water as a deadly weapon. *Gollihar*, 46 S.W.3d at 258.

### c. *Dunn*

Next, Hernandez argues that the State presented the jury with a theory that multiple assaults occurred, and because the jury was presented with two distinct assaults, this Court erred on original submission when we failed to consider the bases on which the jury reached its verdicts under *Dunn v. United States*, 442 U.S. 100 (1979). Hernandez asserts that, under *Dunn*, the sufficiency review for assault in a multi-count assault indictment

---

[2]To the extent that Hernandez's complaint could be construed to directly challenge the indictment allegations, he has forfeited that claim. "If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding." TEX. CODE CRIM. PROC. art. 1.14(b). No such objection was made here.

[3]*Johnson*, 364 S.W.3d at 299 n.47 (concluding that the evidence was sufficient to support the conviction but reserving the question of whether the variance was "significant enough to warrant a new trial based upon lack of notice").

must identify which assault was charged and tried under each count, and a variance between "the indictment and the trial theory on the one hand and the hypothetically-correct jury charge on the other must be considered material."

In *Dunn*, Dunn testified during a grand-jury proceeding, but he later recanted that testimony at an attorney's office on September 30 while under oath. *Dunn*, 442 U.S. at 103. He was charged with making a false declaration under oath "in any proceeding before or ancillary to any court of grand jury of the United States." *Id.* at 102–04. At a court hearing on October 21, Dunn testified and again recanted his grand-jury testimony. *Id.* at 104. The State indicted him for the September 30 statement, and the jury convicted him based on the September 30 statement. *Id.* at 106. The court of appeals upheld the conviction. *Id.* At 104–05. According to it, the September 30 statement did not qualify as an "ancillary proceeding," but his recantation at the October 21 hearing did. *Id.* at 105. The court of appeals reasoned that, although Dunn was indicted and convicted for his September 30 statement, there was only a nonprejudicial variance between the indictment alleging September and the proof that the October hearing met the "ancillary proceeding" element. *Id.* The Supreme Court reversed and stated that there was no variance between the indictment and proof at trial. *Id.* Instead, there was a discrepancy between the basis on which the jury rendered its verdict (the September statement) and that on which the court of appeals upheld the conviction (the October statement). *Id.*

We do not think that *Dunn* controls the outcome of this case. We have

characterized the holding in *Dunn* (and its progeny) as stating a rule that applies only "when a defendant is convicted on a charge that was neither alleged in an indictment nor presented to the jury . . . ." *Adames v. State*, 353 S.W.3d 854, 859–60 (Tex. Crim. App. 2011). We reasoned that, in such a situation, the defendant's constitutional right to notice of the specific charge he must defend against is violated. *Id.* Here, Hernandez was on notice from the indictment allegations that he was charged with aggravated sexual assault, aggravated assault with a deadly weapon, and family-violence assault by strangulation stemming from a series of events during a single night, and the State presented evidence that Hernandez committed those offenses. The jury was also instructed on those offenses. This is not a situation in which we have reinterpreted the statute after Hernandez was convicted as in *McCormick v. United States*. 500 U.S. 257, 273 (1991), nor is it one in which we are upholding Hernandez's aggravated-assault-with-a-deadly-weapon conviction based on a different statutory provision than was alleged in the charging instrument and presented to the jury as in *Cole v. Arkansas*, 333 U.S. 196, 197 (1948), nor is it one in which the indictment, trial evidence, and jury charge were based on a description of a unit of prosecution for the offense—such as "ancillary proceeding" in *Dunn*—and affirmed on another theory. *Dunn*, 442 U.S. at 107.

We determine the basis of a jury's verdict for *Dunn* purposes by applying our variance law, as Hernandez alludes to in his brief. In line with that jurisprudence, and as applied to *Dunn*, a non-statutory allegation that does not describe a unit of prosecution

does not constitute a basis for the jury's verdict because it is not part of the legal or factual theory submitted to the jury, even if it is included in the jury charge. The State's legal theory was that Hernandez committed aggravated assault with a deadly weapon. The State's factual theory was that Hernandez exhibited or used water as a deadly weapon while he caused Molien bodily injury, and the evidence supported that theory. The State was not bound to prove how Hernandez assaulted Molien or how he exhibited or used water as a deadly weapon as part of its factual theory. There might be a *Dunn* problem if, for example, the State had alleged that Hernandez caused a specific bodily injury, and the jury convicted him on that basis, but an appellate court revised the basis of that conviction because, while there was insufficient evidence to support the pled injury, there was sufficient evidence of another injury to support the conviction. This is because the allegation would be a non-statutory allegation that describes a unit of prosecution for aggravated assault, and in that scenario, Hernandez's conviction would have been sustained based on a factual theory not alleged in the indictment. Similarly, if Hernandez had been indicted for aggravated assault with a deadly weapon, and the jury convicted him of that offense, but the evidence showed only that he caused the victim serious bodily injury, not that he used a deadly weapon, an appellate court would err in upholding the conviction based on the serious bodily injury because that "legal theory" was not presented to the jury.

We must also address the jury charge. The charge contained a paragraph labeled,

"Accusation," which restated the by-striking manner-and-means allegation, but the abstract and application portions of the charge refer only to "bodily injury." The issue is which portion of the jury charge controls for a *Dunn* analysis. The relevant portions of the jury charge state that,

### Accusation

In Count II, the state accuses the defendant of having committed the offense of aggravated assault. Specifically, the accusation is that the defendant intentionally, knowingly, or recklessly caused bodily injury to Melanie Molien by striking Melanie Molien's head or body with the defendant's hands, and during the commission of this assault the defendant used or exhibited a deadly weapon, to-wit: water.

\*     \*     \*

### Application of Law to Facts

You must determine whether the state has proved, beyond a reasonable doubt, three elements. The elements are that—

1. The defendant, in Hays County, Texas, on or about March 21, 2014, caused bodily injury to Melanie Molien; and

2. The defendant did this—
        a. intending to cause bodily injury
        b. knowing that he would cause bodily injury; or
        c. with recklessness about whether he would cause bodily injury; and

3. The defendant, during the alleged assault, used or exhibited a deadly weapon, to-wit: water.

Here, even if the "Accusation" paragraph controlled, the by-striking manner-and-means allegation in that paragraph does not constitute a basis for the jury's verdict, as we have already explained, so there is no *Dunn* problem. The basis of the jury's verdict was

that Hernandez caused Molien bodily injury and that he exhibited or used water as a deadly weapon while he did so. TEX. PENAL CODE § 22.02(a)(2).

### 3. Preclusive Effect of an Acquittal of One Count on the Sufficiency Analysis of Another Count

Next, Hernandez argues that this Court on original submission failed to give effect to the jury's acquittal of the family-violence-by-strangulation count when we upheld the aggravated-assault-with-a-deadly-weapon conviction based upon the same conduct for which Hernandez was acquitted. We are not persuaded. Hernandez appears to assert a multiple-punishments claim, *Garfias*, 424 S.W.3d at 58, but there is no multiple-punishment problem here because Hernandez was convicted of only one offense—aggravated assault with a deadly weapon—consequently, he could not have been punished for the same conduct twice. Had Hernandez been convicted of both counts, he might prevail on a multiple-punishments double-jeopardy claim, but we need not resolve that question here.[4]

Hernandez's real complaint seems to be that the jury reached inconsistent verdicts. When measuring the sufficiency of the evidence, each count must stand or fall on its

---

[4]For example, in *Bigon v. State*, 252 S.W.3d 360 (Tex. Crim. App. 2008), we held that there was a multiple-punishment violation where Bigon had been convicted of intoxication manslaughter, manslaughter, and felony murder after a car accident because, under the facts of that case, he was punished for the same conduct more than once under distinct statutes even though the legislature intended for the conduct to be punished only once. *Id.* at 372.

own,[5] and when analyzing the sufficiency of the evidence of a particular conviction, we consider *all* of the evidence admitted at trial under the *Jackson* standard. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016). But, if a defendant is acquitted of one count and convicted of another based on the same evidence in a single trial, the defendant cannot rely on the inconsistent verdicts to attack the defendant's conviction.[6] *Dunn v. United States*, 284 U.S. 390, 393 (1932).

## CONCLUSION

We affirm our original opinion reversing the judgment of the court of appeals, and we reject Hernandez's arguments on rehearing for the reasons stated herein. No further motions for rehearing will be entertained.

Delivered: September 19, 2018

Publish

---

[5]*Dunn v. United States*, 284 U.S. 390, 393 (1932) ("Each count in an indictment is regarded as if it was a separate indictment."); *see Hernandez*, 2017 WL 4675371, at *5 (Richardson, J., concurring).

[6]Although Hernandez's claim is akin to a collateral-estoppel claim, there is a distinction between an inconsistent-verdicts claim and a collateral-estoppel claim. The former applies when there has been only one trial, and the latter applies only when there have been two trials. *See Hite v. State*, 650 S.W.2d 778, 783 n.7 (Tex. Crim. App.1983).